FITCHARD v. DOHENY et al.

(Supreme Court, Appellate Division, Fourth Department. March 8, 1904.)

1. SALES—FRAUD—MISREPRESENTATION AS TO SOLVENCY—INTENT.

Where the president of a corporation falsely stated to one selling personalty to the corporation that it was solvent, that its bills were always paid when due, and that a note which it was proposed to give in payment could be cashed at any bank, the sale was induced by fraud, though the president believed the note would be paid when due, and had no specific intention of acquiring the property without paying for it.

Appeal from Judgment on Report of Referee.

Action by Florence E. Fitchard against George Doheny and another, as administrators of Lucius Gleason, deceased. From a judgment for defendants, plaintiff appeals. Reversed.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, HISCOCK, and STOVER, JJ.

Charles H. Searle, for appellant.
Frank Hiscock and A. H. Cowie, for respondents.

WILLIAMS, J. The judgment should be reversed, and a new trial granted before another referee, with costs to appellant to abide event. The action was brought to recover damages for the conversion of 20 bales of hops of the value of $1,000. The hops were originally the property of the plaintiff. About November 1, 1892, they were sold and delivered to the Greenway Brewing Company, and while in the possession of that company they were levied upon by the sheriff of Onondaga county by virtue of an execution issued upon a judgment against the company in favor of the estate of Lucius Gleason, and were sold February 9, 1893, and bid in for the said estate. After the levy and before the sale the plaintiff claimed the hops as her property, and demanded the same of the sheriff, who refused to surrender them. The estate, with knowledge of the plaintiff's claim, received the hops under its purchase at sheriff's sale, and appropriated the same to its own use. It paid no cash for the hops, but applied the amount of the purchase price upon its execution. The plaintiff sold the hops to the brewing company upon credit; never received any part of the purchase price thereof, and her claim of title thereto was based upon the allegation that the purchase was induced by fraud and deceit practiced upon her by the brewing company, and by reason thereof no title to the hops passed from her to the brewing company under the sale and delivery thereof. The question litigated in the case was the alleged fraud and deceit. The referee found that there was no fraud or deceit, and that title did, therefore, pass to the brewing company. This finding was erroneous, and should not be sustained. Fraud and deceit were clearly established by the evidence, and the plaintiff was entitled to recover in the case.

The facts with reference to this issue were not in dispute, and as found by the referee or proven in the case were as follows: The hops

¶ 1. See Sales, vol. 43, Cent. Dig. §§ 87, 95.

in question were part of 35 bales sold and delivered at one time, the other 15 bales having been consumed before the seizure of the property by the sheriff upon the execution. The brewing company was a corporation with 2,000 shares of stock, of which 1,998 shares were held by John Greenway, the president and treasurer, 1 share by Lucius Gleason, vice president, and 1 share by Benjamin F. Hull, secretary. At the time of the sale of the hops John Greenway was carrying on and managing the business. Plaintiff's husband and agent made the sale of the hops, transacting the business with John Greenway. Plaintiff's agent asked Greenway about the pay for the hops, and Greenway said he would give a note for 90 days, and plaintiff could get the money on it at any bank in Syracuse; that the company's bills were always paid when due; that the company was perfectly responsible for all goods it bought, and its paper was as good as money; that it had 40,000 pounds of extract on hand, worth $2.25 to $2.50 per pound, owned it, and it was paid for; that the company owned all the real estate and a good deal of other property, and its property was worth a great deal more than the company owed, and the company was in good shape. The plaintiff relied upon these representations, believed them to be true, and was induced thereby to sell and deliver the hops upon a credit of 90 days, and to take the company's note for the purchase price, payable February 1, 1893, instead of requiring cash to be paid therefor. The statements so made were grossly false and untrue, and were known by Greenway to be so when he made the same.

Gleason, the vice president of the Brewing Company was president of the Third National Bank of Syracuse from 1889 until he died, January 3, 1893. Both Gleason and his bank had business relations with the brewing company for many years. In 1890 Gleason held a mortgage upon the brewing company's real property, which he foreclosed, and the property was sold on September 4th of that year, and bid in by Gleason, and judgments taken for deficiency against the company for over $90,000. The bank also recovered a judgment against the brewing company during that year for an indebtedness of over $30,000. September 4, 1890, an agreement was made between Gleason and John Greenway wherein it was recited that the brewing company was indebted to Gleason in the sum of $444,000, and to the bank in the sum of $46,000, and wherein it was agreed Gleason would sell to Greenway the real property covered by the mortgage, and bid in under the foreclosure sale for the amount owing by the brewing company to Gleason and the bank and all costs and expenses of the foreclosure of the mortgages and the procuring of the judgments by Gleason and the bank, less anything that might be realized by a sale of any personal property of the brewing company upon executions issued upon such judgments, the payments by Greenway to be made as follows: Interest on the whole amount quarterly at 6 per cent., and principal, $12,500, on April 1, 1891, and the same amount every three months thereafter until the whole principal sum should be paid, and whenever the principal should be reduced to $250,000 a deed should be made, and a mortgage given back for the balance of the purchase price unpaid.

There were other provisions in the agreement as to details which are unimportant to refer to here. It was provided that upon default being made in any payments of principal or interest by Greenway, Gleason should have the right to forfeit the agreement, and to take and hold possession of the real property. At the time the hops in question were purchased of the plaintiff, Greenway had made substantially no payments under this agreement, so that the condition of things then was this: The brewing company had no interest whatever in the real property. All its title had passed to Gleason under the foreclosure, and he and the bank had judgments against the brewing company for over $130,000, and could issue executions upon the judgments whenever they desired, and levy upon and sell the personal property of the company. It was contemplated by the agreement between Gleason and Greenway that they might and would do this, and Greenway would have the benefit of the personal property so sold in reduction of the purchase price he had agreed to pay Gleason for the real property. There was no provision for redeeding the real property to the brewing company in any event. It is difficult to determine from the evidence what personal property the company had at the time the hops were purchased liable to sale under the executions. It is not necessary to go into details. There certainly was not enough to satisfy the judgments against the company, and the referee has found, and counsel on the trial before the referee and on the argument here conceded, that the company was at the time the hops were sold, and had been for a long time prior thereto, insolvent, and unable to pay its debts. It was in a bad condition financially, wholly irresponsible, and unable to meet its obligations. It will be seen without the statement of further details that the representations made by Greenway to the plaintiff's agent were, as above stated, grossly false and untrue, and were well known by Greenway to be so when he made them.

In the face of these well-established facts the referee found that Greenway when he made the statements did not intend to deceive or defraud the plaintiff. The idea of the referee in making such a finding is apparent from a subsequent finding that Greenway did not intend to acquire or obtain possession of the hops without paying for them when the term of credit expired, and he then had reasonable grounds to believe that the hops would be paid for. That is, there was no intent to defraud or deceive, because he believed upon reasonable grounds that the hops would be paid for when the term of credit expired. There can be no doubt that he made the false statements for the purpose of securing the 90-days credit instead of paying cash for the hops, and that the plaintiff was induced to part with her property on credit in reliance upon the truth of such statements. It follows, therefore, as a matter of course, that Greenway intended to and did deceive the plaintiff, and thereby secure the property on credit, and such deceit resulted in damage to the plaintiff to the extent of the value of the hops sold and delivered. That was a fraud upon the plaintiff, whether Greenway believed the property would be paid for or not. It was not necessary that it should be found by the referee that he intended not to pay for it. While such a find-

ing might be necessary where there were no representations, but merely a condition of insolvency, and a failure to disclose it, nothing of that kind is required where false representations are made and relied on, and damages result therefrom. Morris v. Talcott, 96 N. Y. 100; Phœnix Iron Co. v. The Hopatcong, 127 N. Y. 206, 27 N. E. 841; Hotchkin v. Third Nat. Bk., 127 N. Y. 329, 27 N. E. 1050; Harrisburg P. B. Co. v. Welsh, 26 App. Div. 515, 50 N. Y. Supp. 299. We conclude therefore that fraud was established in this case, and the finding by the referee that there was no such fraud was contrary to the evidence, and that plaintiff's right to recover was beyond question. Therefore the judgment appealed from should be reversed, and a new trial granted, as already stated.

Judgment reversed, and new trial ordered, with costs to the appellant to abide event, upon questions of law and of fact. All concur; HISCOCK, J., in result only.

---

PEOPLE ex rel. GRAHAM v. STUDWELL et al.

(Supreme Court, Appellate Division, Second Department. March 4, 1904.)

1. HIGHWAYS—LIABILITY OF TOWN FOR REPAIRS—CONSENT OF TOWN BOARD.
    Though work on a highway, done by the commissioner of highways, is necessary, a town cannot be made liable therefor by confirmation or approval after the work is done; this not amounting to consent, required by Laws 1899, p. 108, c. 84, § 10, providing, if a highway shall be damaged or become unsafe, the commissioner of highways of the town may cause it to be immediately repaired, "if consented to by the town board."

Appeal from Special Term, Westchester County.

Mandamus, on the relation of Samuel H. Graham, against Edwin F. Studwell and others, composing the town board of the town of Rye. From an order overruling a demurrer to an alternative writ, defendants appeal. Reversed.

Argued before HIRSCHBERG, P. J., and BARTLETT, JENKS, WOODWARD, and HOOKER, JJ.

Herbert Reeves (George A. Slater and Alexander S. Rowland, on the brief), for appellants.

Charles P. Cowles (Justus A. B. Cowles, on the brief), for respondent.

JENKS, J. An alternative writ of mandamus commands the defendants, as officers of the town of Rye, to convene as a town board, and "give their consent in the manner provided by law to the payment" of a claim of the relator. As the defendants have demurred, the facts, being thus stated by the relator, are as follows:

The relator, Graham, was during the period of time from April, 1895, to January, 1902, one of the commissioners of highways of the town of Rye, duly elected and qualified to act as such officer, and while so acting he performed the work, labor, and services for the repair of the highways hereinafter mentioned, in excess of the money in his hands as such commissioner of highways, as hereinafter stated, upon certain of the highways of the said town, which said highways