### DETERMINED IN THE

# FOURTH DEPARTMENT

### IN THE

## APPELLATE DIVISION,

### March, 1898.*

Rock H. Parsons, Respondent, *v.* William H. Johnson and Charles C. Conroy, Appellants, Impleaded with Others.

*Action against directors of a stock corporation — damages recoverable where stock is purchased in reliance upon a false annual report — measure of damages.*

In an action brought to recover from the directors of a stock corporation damages, alleged to have resulted to the plaintiff from the exchange of real estate owned by him for certain shares of the corporation's stock, made by him in reliance upon an annual report which represented that the assets of the corporation were largely in excess of its debts, whereas, at the time of making such report and at the time of the purchase of the stock by the plaintiff, the stock was practically worthless and the corporation insolvent, the measure of damages under sections 30, 31 and 32 of the Stock Corporation Law (Chap. 564 of 1890, as amended by chap. 688 of 1892) is the difference between what would have been the value of the stock had its annual report been true and its actual value.

Where, in such a case, the contract of the parties has fixed the value of the real estate, in the absence of any claim of fraud or mistake in respect thereto the ordinary rule applicable to actions for fraud and breach of warranty is applicable thereto.

APPEAL by the defendants, William H. Johnson and another, from a judgment of the Supreme Court in favor of the plaintiff as against the said defendants, entered in the office of the clerk of the county of Erie on the 24th day of May, 1897, upon the verdict of a jury, and also from an order entered in said clerk's office on the

* The other cases of this term will be found in volume 27 App. Div.—[Rep.

App. Div.—Vol. XXVIII.    1

7th day of December, 1897, denying the said defendants' motion
for a new trial made upon a case containing exceptions.

The action was commenced in Erie county in March, 1896, to
recover of the appellants and Henry J. Wilkes, a majority of the
directors of the "Buffalo Brass and Iron Bedstead Company," a
stock corporation organized and existing pursuant to the Stock Cor-
poration Law, damages resulting to the plaintiff, who had purchased
stock in the said corporation upon the faith of an annual report
made by them of the property of the corporation, pursuant to sec-
tions 30 and 31 of the said Stock Corporation Law, which contained
false and material representations as to the financial condition of
the corporation.

This report was made in January, 1895, and filed as required by
the statute, and set forth that the capital stock of the corporation
was $100,000 which had been actually issued; that the amount of
its debts did not exceed the sum of $66,511.67; that the amount of
assets was at least equal to the sum of $170,935.77.

The plaintiff, in conjunction with a relative, Martha J. Parsons,
was the owner of twelve and six-tenths acres of an island in the
Niagara river called "Connor's Island." The appellants were stock-
holders in the corporation, and after some negotiation through an
agent of Johnson's with the plaintiff, Johnson, on the 30th of Sep-
tember, 1895, entered into a written agreement with the plaintiff,
whereby it was agreed that the twelve and six-tenths acres on
"Connor's Island," upon which a valuation of $25,200 was fixed,
subject to a mortgage of $5,000, should be exchanged for 202 shares
of the capital stock of the "Buffalo Brass and Iron Bedstead Com-
pany," being stock held and owned by Johnson, and the par value
of which was $22,000, each party agreeing to deliver to the other
the property to be transferred. Pursuant to this agreement the
plaintiff, his wife and Martha J. Parsons conveyed the premises at
the request of the defendant Johnson to his brother Walter J. John-
son, and the defendant Johnson transferred the 202 shares of the
capital stock mentioned to the plaintiff, and the plaintiff ultimately
surrendered the certificates held by Johnson and received others
issued to him by the corporation. The deed to the land upon the
island was taken in the name of Johnson's brother for the benefit of

the defendants Johnson, Conroy and Wilkes, and they were thus interested in the purchase of the land by Johnson.

There was evidence given upon the trial before the jury strongly tending to prove that, before purchasing the stock, plaintiff examined the annual report above mentioned to ascertain the value of the stock of the corporation, and that, relying upon such report, he purchased the stock. The evidence also made it quite apparent that, at the time of the making of the annual report and at the time of the purchase of the stock by the plaintiff, the stock was worthless and the corporation was insolvent.

Other facts will appear in the opinion of the court.

*August Becker*, for the appellants.

*Charles B. Wheeler*, for the respondent.

WARD, J.:

Upon the trial evidence was given by both sides as to the value of the land upon the island conveyed to the defendant Johnson, but it was only received by the trial court upon the question of the plaintiff's good faith in purchasing the stock. The court in its charge said: "Now, the measure of damages in this case, if you believe that Parsons relied upon the contents of this annual report of 1895, and that it was false in any material representation, the measure of damages for your guidance in this case, in determining the amount of your verdict, is the difference between the value of that stock as it would have been had that annual report been true, and as it actually was with the annual report false, if you shall find it false. And the court has permitted evidence here as to the value of this island merely as a circumstance in the case bearing on the question as to whether Parsons, in making this exchange of properties, did actually rely on this annual report and its contents. The claim being made here by the defendants that the island was worthless ; that it had no actual value and that Parsons knew it; that Parsons did not exchange anything for this stock, and that, therefore, Parsons did not believe he was getting $20,200 worth of stock at this time."

There was an exception to this charge by the defendants, and there was also an exception taken upon the trial to limiting the

effect of this evidence, as has been stated, the contention of the defendants upon the trial and upon this review being that the true measure of damages which should be recovered by the plaintiff, if any, was the actual value of the land conveyed in exchange for the stock, and that the rule of damages as given to the jury by the trial court was erroneous, and the appellants' counsel insists that the statute imposing the liability for a false report by the defendants of the condition of the corporation is penal in its character, and that all that can be recovered is the actual loss, if any, sustained by the plaintiff.

This leads to a consideration of the statute referred to.

Section 30 of the Stock Corporation Law (Chap. 564 of the Laws of 1890, as amended by chap. 688 of the Laws of 1892) provides that "every stock corporation * * * shall annually, during the month of January, * * * make a report as of the first day of January, which shall state:

"1. The amount of its capital stock, and the proportion actually issued.

"2. The amount of its debts or an amount which they do not then exceed.

"3. The amount of its assets or an amount which its assets at least equal.

"Such report shall be signed by a majority of its directors, and verified by the oath of the president or vice-president and treasurer or secretary, and filed in the office of the Secretary of State and in the office of the county clerk of the county where its principal business office may be located."

Section 31 of this law provides: "If any certificate or report made or public notice given by the officers or directors of a stock corporation shall be false in any material representation, the officers and directors signing the same shall jointly and severally be personally liable to any person who has become a creditor or a stockholder of the corporation, upon the faith of any such certificate, report, notice or any material representation therein, to the amount of the debt contracted upon the faith thereof, if not paid when due, *or of the damage sustained by any purchaser of or subscriber to its stock upon the faith thereof.*

"The liability imposed by this section shall exist in all cases

where the contents of any such certificate, report or notice or any material representation therein shall have been communicated, either directly or indirectly, to the person so becoming a creditor or stockholder, and he became such creditor or stockholder upon the faith thereof."

It is entirely clear from this statute that an officer of a corporation making a false statement in the annual report becomes liable to the damages which naturally flow from or are caused by the falsehood. The Legislature has not undertaken to define the precise damage which the injured party may recover, but has used a broad term which covers all damages which flow directly from the false statement. The action upon this statute is one in tort partaking largely of the character of an action for damages for fraudulent representations knowingly made upon the sale of property. At common law and independent of any statute, an action for damages based on fraud could be maintained, and it was not necessary that the representations should be made to the plaintiff directly. It was sufficient if they were made to a third person to be communicated to the plaintiff, or if made to the public generally with a view of its being acted upon. (*Swift* v. *Winterbotham*, L. R. [8 Q. B.] 253; *Morse* v. *Swits*, 19 How. Pr. 275; *Eaton, Cole & Burnham Co.* v. *Avery*, 83 N. Y. 31; *Bruff* v. *Mali*, 36 id. 200.)

In such a case and in an action upon a warranty the measure of damages in the sale of personal property is determined by the difference in value between the article sold and what it should be according to the warranty or representation. (Sedg. Dam. [8th ed.] 777; *Whitney* v. *Allaire*, 1 N. Y. 305, 312; *Krumm* v. *Beach*, 96 id. 398; *Vail* v. *Reynolds*, 118 id. 297.)

The statute cited does not in terms require that the annual report should be false to the knowledge of the officer making it, but goes further than the common law in creating responsibility and makes the officer liable if the report be false in material respects. This indicates the solicitude with which the Legislature sought to protect persons dealing in the stock of the corporation, holding the officer to a strict account for his statement, if false, whether knowingly made or otherwise.

We perceive no reason why the rule of damages applicable in cases of fraud and breach of warranty should not apply here. The par-

ties, by their contract, have fixed the value of the land exchanged for the stock at an amount nearly equal to the par value of the stock.

All of the defendants were parties to that contract or received the benefit of it. It is not alleged in the defendants' answer nor claimed here that there was any fraud or misrepresentation on the part of the plaintiff, or mistake concerning the value of this real estate at the time of the exchange, and in the absence of any of those elements it was not competent for the defendants to attempt to disprove the value which they, themselves, had fixed upon the real estate as a basis for the contract.

Upon the execution of the contract, therefore, the basis of damages was fixed; there was sufficient consideration for the sale of the stock, and in the absence of fraud or mistake it was immaterial whether that consideration was equal to the par value of the stock or not.

To test the consistency of the defendants' position, that the judgment for damages against the defendants should be measured by the real value of the land independent of the contract of the parties, we will assume that its real value, instead of being $20,000 or less, was $40,000, or any amount exceeding the value fixed by the contract. Would it be contended that the defendants would be liable for such excess? We apprehend not.

The learned counsel for the appellant in his exhaustive brief has argued numerous exceptions aside from that which we have considered as to the damages.

A careful examination of the case discloses that they are without merit, and that reversible error does not appear in the rulings upon the trial. That the stock when sold to the plaintiff was worthless or nearly so, and that the corporation was insolvent and had gone into the hands of a receiver for the distribution of its assets can hardly be questioned, and the only real question in the case is what rule of damages should have been adopted at the trial, and that question we have considered.

We will, however, refer to an exception taken to the admission of the evidence of the plaintiff upon rebuttal when he was asked if he had had an offer for this land upon the island. The defendants' counsel objected to that as incompetent. The court held that the

only materiality to the evidence was its bearing upon the question as to what the plaintiff believed the island was worth, and the court held that in that view it was competent. The evidence was received and the plaintiff testified that some years before he had received an offer of $27,000 for the property. This evidence was received after the court had permitted evidence to be given by both parties as to the value of the land upon the subject of the good faith of the plaintiff. It was, perhaps, competent in the view with which it was received, but whether so or not, it does not constitute reversible error in this case.

The views we have expressed lead to the result that the judgment and order appealed from should be affirmed, with costs.

All concurred.

Judgment and order affirmed, with costs.