JAMES W. THAYER, an Infant, by CHARLES KILKENY, His Guardian ad Litem, Respondent, v. UTICA KNITTING COMPANY, Appellant.

MASTER AND SERVANT — INJURIES CAUSED BY ALLEGED IMPROPER INSTRUCTIONS TO SERVANT. Where an examination of the evidence, in an action brought by a servant against a master for injuries claimed to have resulted from improper instructions given to the plaintiff at the time that he undertook the operation of a machine, shows that the instructions were proper and sufficient and that the injuries which plaintiff received must have resulted through some neglect on his part to obey the instructions, a judgment in favor of the plaintiff, entered upon a verdict, must be reversed.

*Thayer* v. *Utica Knitting Co.*, 98 App. Div. 633, reversed.

(Argued October 6, 1905; decided October 24, 1905.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the fourth judicial department, entered November 23, 1904, affirming a judgment in favor of plaintiff entered upon a verdict and an order denying a motion for a new trial.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Frederick G. Fincke* for appellant.     It was physically impossible for the accident to have happened as the plaintiff says it happened.     (*Matter of Harriot*, 145 N. Y. 540; *Dolfini* v. *E. R. R. Co.*, 178 N. Y. 1; *Hudson* v. *R., W. & O. R. R. Co.*, 145 N. Y. 408; *Swart* v. *N. Y. C. & H. R. R. R. Co.*, 81 App. Div. 402; affd., 177 N. Y. 529; *McKinley* v. *M. St. Ry. Co.*, 91 App. Div. 153.)     A nonsuit should have been granted because no negligence was shown on the part of the defendant.     (12 Am. & Eng. Ency. of Law, 916; 1 Labatt on Master & Servant, 317.)

*Thomas S. Jones* for respondent.

HAIGHT, J.     This action was brought to recover damages for a personal injury which occurred on the 24th day of April, 1902.     The defendant was engaged in the manufacture of knit goods, and the plaintiff was one of its employees engaged in operating a machine known as a hydro extractor, but more commonly called a whizzer, used for drying knit goods.     The machine consisted of a perforated metal basket forty inches in diameter, attached to a vertical shaft, which was connected by pulleys with the main shafting of the mill, by which it could be made to revolve at the rate of eight hundred revolutions a minute.     The basket was surrounded by a stationary iron sheath, having a rim upon the top of six inches in breadth.     The machine was set in motion by the pulling of a lever by the left hand of the operator when facing the machine, which shoved the belt upon the pulley, thereby starting the revolution of the vertical shaft and the basket attached to it.     The goods would dry in about five minutes.     The basket revolved from left to right.

The plaintiff was an employee of the defendant, and had operated this machine from the second day of April, 1902, down to the date of his injury.     On that occasion he had

pulled the lever starting the machine, and before he had removed his hand therefrom the end of the goods, which had been placed in the basket, flew out, wound around his wrist, pulling his left arm in around the shaft, crushing it.

No claim is made but that the machine was of proper construction and in good order. The contention of the plaintiff is that his injury occurred by reason of the improper packing of the goods in the basket, and that this was occasioned through improper instructions that were given him at the time that he undertook the operation of the machine. Upon this branch of the case he testified that he commenced work on the morning of the second of April; that Nolan, the foreman, gave him instructions how to operate the machine; that there were two pieces of cloth, consisting of knit light summer underwear, fifty or sixty feet in length, hitched together so as to make one continuous piece; that it was brought in from the dyeing room in a box on wheels, rolled up in front of the whizzer, the end put over a roller and the cloth then pulled down into the basket and packed around "against the sides of the basket away from the central shaft, so that it left a little space around the shaft all the way through the pile." He further testified that he did the work while Nolan was standing by and giving him instructions how to do it; that after he packed the goods in the basket he wound the end around the shaft, saying, "after he told me to wrap it around I wrapped it around in his presence — wrapped it around three or four times; he then told me to shove it down — to shove it down as far as I could — to shove the cloth down and push the cloth which had been wrapped around the shaft down so it was in contact with the load." He also stated that he wound the cloth around the shaft from right to left while Nolan stood there, and that he had no accident until the 24th, and that on that occasion he loaded the basket in the same way that he had been instructed to do on the first occasion, but upon cross-examination he stated he wound the end of the goods around the shaft once or twice.

There is a sharp conflict betweeen the plaintiff and the

defendant's witnesses. But, inasmuch as the jury have found a verdict in favor of the plaintiff, we must assume that they disbelieved the defendant's testimony upon this point, and that the instructions given to the plaintiff with reference to the manner of loading the basket and disposing of the end of the cloth was as is testified to by the plaintiff. The question then arises as to whether such instructions were proper and sufficient and as to whether the accident could have occurred had the plaintiff followed them.

Our examination of the record has disclosed no testimony showing that the instructions given to the plaintiff, as sworn to by him, were improper. Plaintiff's first witness upon the subject testified that he had never operated an extractor, but that he had seen one operated and had observed the different ways in which the goods had been put in the basket, and had observed the operator wind the end of the goods around the shaft, and had also seen him put the end under the goods; that if the basket is filled and the end wrapped around the shaft it would have a tendency to fly out when the machine was first started, but after it had attained a high rate of speed the tendency would be to settle down in the basket toward the outer edge thereof; that he had seen the goods fly out, but could not remember of more than one occasion, and he did not testify as to the manner in which the goods were packed on that occasion. He expressed no opinion as to the effect of starting the machine where the end of the goods had been wrapped around the shaft in the opposite direction from that which the shaft and basket revolved and had then been pushed down to the bottom of the basket. The plaintiff's other witness upon the subject had worked for the defendant less than two weeks operating the extractor. He testified that the goods flew out two or three times during that period, and on those occasions, he says, the goods unwound from the shaft. He did not testify which way the goods were wound around the shaft, but admitted that he wrapped the goods around the shaft at the top of the basket near the surface of the goods and then started the machine in motion. It does not appear

that he pushed the end down into the bottom of the basket after wrapping it around the shaft. We thus come down to the testimony of the plaintiff, to which we have already called attention, from which it appears that the goods had not come out before the day of the accident, and in which he has conceded that the end of the goods might not have been wrapped around the shaft but once or twice.

On behalf of the defendant we have the testimony of an expert, who has called our attention to certain well-known scientific principles about which there can be no question. As soon as the revolution of the basket attained a high rate of speed the centrifugal force would operate upon the goods carrying them laterally against the side of the basket. If the goods, some distance from the end, were wrapped around the shaft and then the end left loose, the centrifugal force would throw it out horizontally from the place where it was wrapped around the shaft; but if the goods were wrapped around the shaft and pushed down into the bottom of the basket, the centrifugal force would only carry the end against the surrounding goods. If the goods were wrapped around the shaft up to the end in an opposite direction from that which the shaft revolved, the friction of the surrounding atmosphere would, upon starting the machine, tend to draw the end around the shaft until this force was overcome by the greater centrifugal force; but if they were wound in the same direction that the shaft revolved they would at once unwind, leaving the end loose, so that it could readily fly out. It is thus apparent that if the goods were wound around the shaft in the same direction that it revolved, or if the goods were left on the top of the basket wound around but once or twice without being pressed down to the bottom, the goods would have a tendency to fly out, and in such a case we can readily see how the accident to the plaintiff occurred. But if the goods were wound around the shaft to the end, and then such part was pressed down to the bottom of the basket so that it was surrounded by the wet goods filling the basket, it is not apparent how the accident could have occurred. Our con-

clusion, therefore, is that the instructions given to the plaintiff were proper and sufficient, and that the injury which he has received must have resulted through some neglect on his part to obey the instructions.

The judgment should be reversed and a new trial granted, with costs to abide the event.

Cullen, Ch. J., Gray, Bartlett, Vann and Werner, JJ., concur ; O'Brien, J., absent.

Judgment reversed.