(55 Misc. Rep. 411.)

TAYLOR v. THOMAS et al.

(Supreme Court, Trial Term, Saratoga County.  July, 1907.)

1. CORPORATIONS—FRAUD—PURCHASE OF CORPORATE STOCK—LIABILITY OF DI-
RECTORS.

A purchaser of stock in a national bank relied on the report of its di-
rectors as to its financial condition. *Held*, that they, having reasonable
cause to believe that the report was false, were liable to the purchaser in
a common-law action for deceit.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 12, Corporations, §
256.]

2. SAME—DAMAGES.

Where the Comptroller of the Currency informed a national bank that
assets of nearly twice the amount of its capital stock were doubtful, and
that they should be immediately collected or removed from the bank's
books, and the directors made a report in which such assets appeared
without having made any examination, *held*, that one who purchased
shares of the bank in reliance on such report is entitled to recover from
the directors the amount paid, with interest.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 12, Corporations, §
256.]

Action by William C. Taylor against Cassius B. Thomas and others.
Judgment for plaintiff.

Edgar T. Brackett, for plaintiff.
Rockwood & Salisbury, for defendants.

VAN KIRK, J.  This action is brought to recover the sum of $4,800,
with interest from July 1, 1904, because of deceit practiced upon the
plaintiff by the defendants.  During the year 1904 the defendants
were directors and stockholders of the Citizens' National Bank of Sara-
toga Springs, which was a national banking association.  On April 6,
1904, the regular report of the condition of the bank was made, and
was attested by the defendants; the report showing the condition of
the bank at the close of business on the 28th day of March, 1904, and
containing the following items:  Capital stock, $100,000; surplus,
$50,000; undivided profits, $13,456.75.  On or about May 24, 1904,
William R. Waterbury, then a stockholder of the Citizens' National
Bank, met the plaintiff, his brother-in-law, and spoke to him concern-
ing the purchase of 20 or 30 shares of the said bank stock.  Mr. Water-
bury informed the plaintiff that he considered the stock a good pur-
chase.  He told him the substance of the report of April 6th, the amount
of the capital stock, the surplus, and approximately the undivided prof-
its, referring at the time to the said report.  He also told him of the
dividends that the bank had been paying and his own estimate of the
value of the stock.  The statement showed the stock to be of a book
value in excess of $160 per share.  The plaintiff left before the conver-
sation was completed, but later wrote to Mr. Waterbury, inclosing two
checks, which aggregated $4,800, and instructing Mr. Waterbury to
buy the shares of stock spoken of.  The checks were sent on or about
the 1st day of June, 1904, and the stock was delivered by Mr. Water-
bury to the plaintiff June 27, 1904.  The plaintiff himself never saw

the statement, and had no other information at the time he purchased the stock, except that furnished him by Mr. Waterbury.

On or about the 27th day of June the Citizens' National Bank received notice from the Comptroller that its capital was impaired to the amount of $100,000, and must be made good by assessment, or the bank would be placed in liquidation. Directly thereafter the assessment was regularly made of 100 per cent. on the capital stock, and thereafter, but before this action was begun, the plaintiff paid his assessment in the sum of $3,000. It is admitted that no losses were incurred by the bank between the 28th day of March, 1904, and the 30th day of June, 1904, so that the condition upon the 28th day of March was the same as upon the 30th day of June, when the assessment was made. On or about March 1, 1904, the Comptroller informed the bank that items carried as assets to the amount of more than $194,000 were doubtful, and that immediate steps must be taken to collect them, or they be removed from the books of the bank. These items appeared in the report dated April 6th. These facts were known to the defendants at the time they attested the report.

The defendants claim that this action cannot be maintained; that the only action, if any, available to the plaintiff, is one under the national banking act; that the statute provides for actions to recover relief against the misconduct of directors, and provides the remedy which must be followed. The rule is that, where a liability is created by statute and the statute provides the remedy, that remedy is exclusive and must be followed. Plank Road Co. v. Morley, 23 N. Y. 553, 554. But here the liability set forth in the complaint is not created by statute. The action is not a statutory action. It is the common-law action to recover damages for deceit affecting the plaintiff only, not the bank or the stockholders generally, and must be considered as such. In the complaint the plaintiff has set forth a cause of action for deceit, and not a cause of action under the statute.

Such a right of action exists. Prescott v. Haughey (C. C.) 65 Fed. 653, 655–659. There is nothing in the United States statutes that destroys the common-law action for deceit practiced by the directors of a national bank. Hardmann v. Bowen, 39 N. Y. 198. If the plaintiff were attempting to enforce a liability created by statute against directors of a national bank, we should have a different case than that at bar. Hale v. Hardon, 95 Fed. 766, 769, 37 C. C. A. 240. The cases cited by defendants sustain these propositions. Bank v. Peters (C. C.) 44 Fed. 13, 14; Hayden v. Thompson (C. C.) 67 Fed. 273; Gerner v. Thompson (C. C.) 74 Fed. 125, 126. In the latter case the court says:

"But rights of action arising at the common law and growing out of transactions not injuriously affecting the capital stock or the interests of the shareholders at large may be enforced by any one suffering special injury thereby."

If, therefore, the evidence establishes all of the elements necessary for a recovery in such an action, the action in its present form can be maintained. Kuelling v. Lean Mfg. Co., 183 N. Y. 78, 85, 75 N. E. 1098, 2 L. R. A. (N. S.) 303, 111 Am. St. Rep. 691.

The report of April 6, 1904, was attested to be true by the defend-

ants, with the intent that it should be published for the information of the public and for all who would have dealings with the bank and in its stock. The defendants claim that there is no sufficient proof that the said report or statement was false. We think this contention is wrong. It is conceded that no considerable losses were incurred by the bank after March 28, 1904, and before June 30, 1904. On or about June 30th, the 100 per cent. assessment had been ordered and was regularly made. The order from the Comptroller directing the assessment and the assessment thereafter were made in compliance with the United States statutes (paragraphs 5205 and 5206). The Comptroller is required to instruct the bank the amount to which the capital has been impaired and require the stockholders to make the assessments. Hulitt v. Bell (C. C.) 85 Fed. 98. This assessment having been directed by the Comptroller and made by the stockholders, among whom were the defendants, is evidence that, when the report was made, there was in fact no surplus, no undivided profits, and that the capital had been impaired to its full amount. This action of the Comptroller ordering the assessment is a judicial determination for the necessity of such an assessment, and is conclusive upon the stockholders, and cannot be questioned by them in any collateral proceeding, or in any litigation which may thereafter be instituted. Bank v. Mathews, 85 Fed. 934, 938, 939, 29 C. C. A. 491, and cases cited; Aldrich v. Campbell, 97 Fed. 663–665, 38 C. C. A. 347. The evidence shows that the report or statement was false.

The defendants urge that, though the report should be found false, there is not sufficient proof that the defendants knew it to be false, and that they cannot be held liable in an action for deceit based upon the false report unless they attested the report knowing it to be false. The bank had received notice from the Comptroller about March 1, 1904, that $194,000 of the items counted as assets of the bank were doubtful and must be collected or charged off. This notice was known to the defendants at the time, they being directors of the bank, and it was a direct warning to them by the bank examiner and Comptroller that assets to nearly twice the amount of the capital stock were considered doubtful. This warning is, of course, not competent proof that the doubtful paper was uncollectible; but it gave to these defendants notice that they should not include all those assets in the report, at least without investigation and examination. Had they examined, as they should have done, they would have learned that the capital was impaired to its full amount. The failure to make any examination is not mere negligence, misjudgment, or want of caution; nor is it mere casual indifference to results or breach of duty. It amounts either to actual recklessness of results, or to a willful refusal to make the examination, so that they could innocently make a good report, when a true statement of the condition of the bank would perhaps have been ruinous. The facts are very different from those existing in Robinson v. Hall (C. C.) 59 Fed. 648, and Warner v. Penoyer (C. C.) 82 Fed. 187, among other things, from the fact that here the defendants had direct warning in writing from the Comptroller, after reports from the bank examiner, of the bad condition of the assets. After the warning by the Comptroller and proof of the actual condition of the

bank, at the time of which the report speaks, the court is bound to hold that either defendants knew the actual condition and concealed it or made the report recklessly. It is not necessary for the plaintiff to show that these defendants actually knew the report to ·be false. It is sufficient to maintain the action if he shows that the defendants attested this report, not knowing whether it was true or false, and not caring what the fact might be, but recklessly paying no heed to the injury which might ensue. Kountze v. Kennedy, 147 N. Y. 124, 129, 41 N. E. 414, 29 L. R. A. 360, 40 Am. St. Rep. 651. "Fraud is proved when it is shown that a false representation has been made knowingly or without belief in its truth, or recklessly without caring whether it be true or false." Headnote, 12 Eng. R. C. 250; Derry v. Peek, 14 App. Cas. 337. The fact that the defendants had reason to believe that the report was false and still made it is evidence o'f their intent to deceive. Salisbury v. Howe, 87 N. Y. 135.

The defendants, as directors of the bank, evidently were at the time in a difficult position. They at least knew from the warning given by the Comptroller that the bank was probably in a bad financial condition. What actual facts they knew concerning the condition of the bank is not disclosed by the evidence. A report, however, showing losses to the amount of $194,000, would more than wipe out the capital stock, surplus, and undivided profits, as shown in the report, and would probably cause the ruin of the bank. The officers and directors of the bank would naturally hesitate to make a report which would cause its ruin; but, however loyal this sentiment may be to the bank, it cannot relieve these defendants from the consequences of making a report either falsely or recklessly. After the warning by the Comptroller, and before attesting the report, the defendants must have proceeded upon some reasonable inquiry, and have had some apparently good ground for attesting the report as it stood (Hammond v. Pennock, 61 N. Y. 145, 151), in order to relieve themselves from responsibility. They were not called as witnesses, either to show lack of knowledge of the actual condition of the bank, or to show that they made any inquiry or had any apparent ground for attesting this report to be true. On the contrary, the evidence discloses that they had good reason for believing that the report was false. When this report was made of the standing of the bank it was made and published to disclose the financial condition of the bank and to assure those who would deal with the bank; and, when it was attested by directors, they knew that, if not true, they were deceiving those who read it, both as to the standing of the bank and as to the value of the stock. In this particular case the statement assured the public that, not only the capital stock was unimpaired, but there was a surplus and undivided profits of $63,000, when in fact there was no surplus or undivided profits and the capital was lost. It is not sufficient here to say that this report disclosed the actual condition as shown by the books of the bank. These defendants could not rely upon the books after the warning they had received from the Comptroller. They were told by the Comptroller that the very books contained items of assets to the amount of $194,000 which the Comptroller considered doubtful. This is not a case in which directors, without warning and without reason to be-

lieve that there were considerable inaccuracies in the books of the bank, attest a statement believing it to be true. It is rather a case in which these defendants either knew the statement to be false or willfully refused to make an examination, and, reckless of consequences, attested the report.

The plaintiff and his agent, Waterbury, relied upon the report in the purchase of this stock. This is the fair inference to be drawn from the facts of the case. Although Waterbury made statements to the plaintiff outside of the report, it appears that it was the report itself which he relied upon in assuring the plaintiff of his estimate of the value. It was the substantial part of the inducement. It is not necessary for the plaintiff to show that it was the sole inducement. Bank v. Bank, 56 Fed. 139, 5 C. C. A. 448. It is said in Hadcock v. Osmer, 153 N. Y. 608, 47 N. E. 923:

"An action to recover damages for deceit cannot be maintained without proof of fraud as well as injury. Actionable deceit cannot be practiced without an actual intention to deceive, resulting in actual deception and consequent loss. But, while there must be a furtive intent, it may exist when one asserts a thing to be true which he does not know to be true, as it is a fraud to affirm positive knowledge of that which one does not positively know. Where a party represents a material fact to be true to his personal knowledge, as distinguished from belief or opinion, when he does not know whether it is true or not, and it is actually untrue, he is guilty of falsehood, even if he believes it to be true; and if the statement is thus made with the intention that it shall be acted upon by another, who does so act upon it to his injury, the result is actionable fraud. Kountze v. Kennedy, 147 N. Y. 124, 130, 41 N. E. 414, 29 L. R. A. 360, 49 Am. St. Rep. 651; Rothschild v. Mack, 115 N. Y. 1, 7, 21 N. E. 726; Marsh v. Falker, 40 N. Y. 562, 573; Bennett v. Judson, 21 N. Y. 238; Addison on Torts, 1007; 1 Bigelow on Fraud, 514."

If, under those facts, one should be held liable for the damage caused, he cannot be allowed to escape liability when he had been warned that the report showed a false condition of the bank. The plaintiff has established all of the elements necessary to maintain the action against the defendants. 12 Eng. Rul. Cas. 235, 298; Palsey v. Freeman, 3 Term Rep. 51–65; Derry v. Peek, 14 App. Cas. 337–380; Arthur v. Griswold, 55 N. Y. 410; Kuelling v. Lean Mfg. Co., 183 N. Y. 85, 75 N. E. 1098, 2 L. R. A. (N. S.) 303, 111 Am. St. Rep. 691.

The measure of damages in this case is "a sum of money equal to the difference between the value of the property (stock) as it was in fact and the value as it would have been if the representations had been true." Vail v. Reynolds, 118 N. Y. 310, 23 N. E. 302. Under the report of the value of the stock was $163 per share. The Comptroller's warning that book assets were doubtful to the amount of $194,000 is not proof that the assets were in fact valueless to that amount; but the assessment directed by the Comptroller is evidence that its book value was then nothing. Whether the losses, passed upon by the Comptroller in his determination that the assessment must be made, were included entirely in the $194,000 of doubtful assets, does not appear. It does appear by stipulation that, of the $194,000 of doubtful assets, $97,000 have been collected; but I am not informed whether before or after the assessment. If we assume, as defendants in their brief say we must assume, that the directors did their duty and collected the entire $194,000 of doubtful assets, then the cause of the assessment must

have been something else than the said doubtful assets.  Between the time of the notice from the Comptroller, about March 1st, and the assessment, three months expired; so that, if the directors did their duty, they would probably have collected a large part of that which could be collected before the time of the assessment.  If the doubtful assets included all of the losses that had occurred at the time of the assessment, then the stock, after the payment of the $97,000 collected, was worth $66 per share, and the plaintiff's loss would be $94 per share; but no proof is presented as to the actual value of the stock at any time after the assessment, except that the collection of the assessment gave it a value of $100 per share.

Under the proof and the rule of damages, I am bound to hold that the plaintiff has suffered damages as claimed in the sum of $4,800, with interest from the time the stock was delivered, July 1, 1904.

Judgment accordingly.