GREENE v. MERCANTILE TRUST CO. et al.

(Supreme Court, Special Term, Erie County. June, 1908.)

1. FRAUD—FRAUDULENT REPRESENTATIONS.

Where one makes false representations, known to be such and intended to influence another, and which come to the latter's knowledge, and in reliance on which he in good faith parts with property or incurs an obligation, the one making the representations renders himself liable for the damages sustained, and it is not necessary that the representations be made to plaintiff personally: it being sufficient that they are made to the public at large for the purpose of influencing any one who may act on them, nor is it necessary that the one making them should himself receive the benefit of the alleged fraud.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 23, Fraud, §§ 3–23.]

2. SAME.

The essential elements necessary to constitute a cause of action for deceit are (1) representations; (2) falsity; (3) scienter; (4) deception; and (5) injury—though to these elements should be added the qualifications that the representations should have been intended to influence the action of the person injured by them.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 23, Fraud, §§ 3–23.]

3. SAME.

While, if false representations are addressed to the public generally or to a class, any one belonging to the class and misled may sue, yet where a false prospectus is addressed to a limited class only, as the persons intended to be influenced, then as a rule persons outside that class with whom the persons making the statements have no dealings, but who may have been injured by reliance on such statements independently coming to their knowledge, cannot maintain an action on them for fraud and deceit.

4. SAME—COMPLAINT—SUFFICIENCY.

A prospectus issued by defendants purported on its face to be simply an invitation to the public to subscribe for an issue of "bonds" of a company. In an action for deceit, plaintiff alleged that the prospectus was

·issued with intent that the statements therein should be relied on by the public and by plaintiff, and that they should be thereby induced to purchase "bonds and stocks" of the company; that plaintiff was thereby induced to purchase "stock" of the company; that the representations in the prospectus were false and fraudulent; that the stock was worthless; and that plaintiff was damaged thereby. *Held*, that the complaint did not, as matter of law, fail to state a cause of action, on the ground that the prospectus absolutely negatived the allegations of the complaint, since under his allegations plaintiff could show that the stock had been listed on the exchange, that defendants as holders of large blocks thereof desired to dispose of it, and that it was agreed among them that the best method of creating a demand and sale was by the distribution of the prospectus calling attention to the alleged merits of the company, though ostensibly asking for subscriptions to its bonds.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 23, Fraud, §§ 36–45.]

5. PLEADING—DEMURRER—ADMISSIONS.

Where a demurrer is on the ground that the complaint does not state facts sufficient to constitute a cause of action, it must be assumed that all of the facts alleged in the complaint as well as those that may be inferred or implied therefrom by reasonable and fair intendment, are true.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 39, Pleading, §§ 525–539.] ·

Action by Francis V. Greene against the Mercantile Trust Company and others. Demurrer by certain defendants to the complaint overruled.

Edgar T. Brackett and William S. Ostrander, for plaintiff.
B. H. Inness Brown, for defendant Mercantile Trust Co.
Lyman M. Bass, for defendants Alexander & McCook.
Strong & Cadwalader, for defendant Krech.

WHEELER, J. The defendants demur to the plaintiff's complaint on the alleged ground that the complaint fails to state a cause of action. Two other grounds of demurrer are stated in the pleading; but, as they are technical, counsel for the defendants do not press them.

The action is one at common law for alleged fraud and deceit. The plaintiff alleges that he was induced to purchase certain shares of capital stock of the United States Shipbuilding Company by means of false and fraudulent representations of the defendants, contained in a certain prospectus issued and circulated by them touching the affairs of the corporation in question. The complaint contains three counts, each similar in character as to the general allegations but differing in detail. The main differences are that, in the first count, the plaintiff alleges the representations contained in the prospectus were false to the knowledge of the defendants. In the second count it is alleged the representations were made as of the defendants' own knowledge, recklessly, without their having knowledge as to their truth or falsity. In the third count are added allegations of a conspiracy between defendants. The complaint does not set forth in full the wording of the prospectus complained of, but, upon the argument of the demurrer, it was orally stipulated that the prospectus in question should be submitted to the court, and be considered by it in determining the questions raised. Subsequently a written stipulation to the same effect, with the prospectus attached, was submitted to the

court. The allegations of the complaint are, in substance: (a) That prior to the organization of the United States Shipbuilding Company the defendant the Mercantile Trust Company entered into an agreement with various persons who were interested in the formation of the shipbuilding company, by which, for a valuable consideration, it undertook to place the bonds and stock of the shipbuilding company before the public, for the purpose of selling the same, which bonds and stock were publicly offered to the public for sale through such bankers or brokers as were designated by the trust company. (b) That thereafter, but on or prior to June 14, 1902, for the purpose of placing the bonds and stock before the public for purchase, and with the intent and view of inducing the public to purchase the same, the defendants prepared or caused to be prepared the prospectus in question. (c) That said prospectus was prepared by the defendants for the purpose of being publicly circulated, was widely published by them in the press, and large parts were printed and circulated under their direction, with the intent that the public and the plaintiff should be thereby induced to purchase the bonds and stock of the shipbuilding company. (d) That the plaintiff, in reliance upon such prospectus, purchased a large block of said stock. (e) That many of the statements contained in the prospectus were false and known by the defendants to be false at the time of issuing the prospectus. (f) That the stock so purchased was in fact worthless and the plaintiff was greatly damaged. These allegations are, in substance, repeated in each count.

The prospectus in question submitted for the consideration of the court under the stipulation above referred to, instead of being a prospectus in form looking toward the sale of stock of the shipbuilding company, is a circular containing certain statements relative to the organization of the company, the amount of its capital stock, the value of its assets, its earning capacity, etc., and further states that the Trust Company of the Republic is authorized to receive subscriptions for an issue of $9,000,000 first mortgage 5 per cent. sinking fund 30-year gold bonds. Subscriptions to these bonds are invited at 97½ per cent., and it states that:

"Application for bonds must be made on the accompanying form and forwarded to the Trust Company of the Republic, with the amount of the deposit. * * * The Trust Company of the Republic reserves the right to close the subscriptions at any time and to reject any and all subscriptions."

The prospectus then gives the names of various banks and bankers "who are authorized to receive in their respective cities subscriptions for these bonds."

It will be noted that in this prospectus not a word is said about the sale of stock. Subscriptions are invited for the purchase of bonds alone. The plaintiff does not allege that he purchased any bonds, but the complaint is that he purchased stock on the strength and in the belief that the statements contained in the prospectus were true. Nor does the plaintiff allege that he purchased the stock in question from the defendants or any of them, and the inference, therefore, is that he made the purchase of stock in the open market from third persons.

The counsel for the defendants, therefore, insist upon the argument of this demurrer that they are not legally liable for any damages sustained by reason of such purchases, and that the complaint fails to state a cause of action. If this were the trial of the issues before a jury, and the plaintiff were simply to rely upon the publication and circulation of the prospectus by the defendants, it would be the duty of the court to grant a nonsuit for a failure to make out a case. It is not sufficient, to sustain an action of this nature, that the plaintiff was misled by false statements contained in a prospectus, but, in addition, it is necessary for him to establish some privity between himself and those making the false representations. There can be no question that the law is well established that where a person makes false representations, known to be such and calculated and intended to influence another, and which comes to his knowledge, and in reliance upon which he in good faith parts with property or incurs an obligation, the person making such representations renders himself legally liable for the damages sustained. Brackett v. Griswold, 112 N. Y. 454–467, 20 N. E. 376; Tindle v. Birkett, 171 N. Y. 524, 64 N. E. 210, 89 Am. St. Rep. 822; Eaton C. & B. Co. v. Avery, 83 N. Y. 31, 83 Am. Rep. 389; Morgan v. Skiddy, 62 N. Y. 319. It is not necessary that these representations should be made to the plaintiff personally. Brackett v. Griswold, supra. It is sufficient that such representations are made to the public at large for the purpose of influencing any individual who may act upon them. Any person so acting may maintain an action to recover for the injury sustained. Brackett v. Griswold, supra. Nor is it necessary that the person making the representations should himself receive the benefits and fruits of the alleged fraud. Morgan v. Skiddy, supra; Hindman v. First Nat. Bank, 112 Fed. 931, 50 C. C. A. 623, 57 L. R. A. 108. This doctrine of law has been applied and enforced in numerous cases. It has been applied to cases where false and fraudulent statements have been made to commercial agencies for the purpose of obtaining fictitious ratings, and thereby securing credit. Tindle v. Birkett, 171 N. Y. 520, 64 N. E. 210, 89 Am. St. Rep. 822; Eaton C. & B. Co. v. Avery, supra; Mills v. Brill, 105 App. Div. 392, 94 N. Y. Supp. 163; Pier Bros. v. Doheny, 93 App. Div. 1, 86 N. Y. Supp. 971; Arnold v. Richardson, 74 App. Div. 581, 77 N. Y. Supp. 763. It has been applied to a case of a letter addressed and sent to a baker, with the intention of its being shown to a vendee. Ettlinger v. Weil, 94 App. Div. 291–297, 87 N. Y. Supp. 1049. It has been applied to cases where the law requires directors of a corporation to make and publish certain annual reports of the affairs of a corporation, and an innocent party purchases stock of the corporation in reliance on the statements contained in the report (Parsons v. Johnson, 28 App. Div. 1, 50 N. Y. Supp. 780; Morse v. Switz, 19 How. Prac. 275; Taylor v. Thomas, 55 Misc. Rep. 411, 106 N. Y. Supp. 538), or where a corporation through its officers issues fraudulent and spurious certificates of stock, and the stock is purchased by another in the belief of its genuineness (Bruff v. Mali, 36 N. Y. 200). These cases all emphasize the rule that one may make himself liable for fraud although no personal communications have passed between the parties.

The essential elements necessary to constitute a cause of action for

deceit are (a) representations; (b) falsity; (c) scienter; (d) deception; (e) injury. But to these elements should also be added another qualification, and that is that the representation should have been intended to influence the action of the person injured by them. If addressed to the public generally or to a class, then any person belonging to the class and misled may sue. Where, however, the false prospectus is addressed to a limited class who only are the persons intended to be influenced, then as a rule persons outside that class with whom the persons making the statement have no dealings but who may have been injured by reliance upon such statements independently coming to their knowledge cannot maintain an action upon them for fraudulent deceit. A leading English case upon this subject is that of Peek v. Gurney, 6 English & Irish Appeals, 377, a House of Lords case decided in 1873. In that case certain promoters of a corporation issued a prospectus (claimed to be false) inviting subscriptions to the stock of the company. The plaintiff, having seen the prospectus, and relying on its truthfulness, purchased some of the stock of the company in the open market. The House of Lords held that liability of the directors for the false representations in question did not as of course follow the shares on their transfer from an allottee to his vendee, but that in order that a third person, the vendee, should be enabled to maintain any proceeding at law or in equity against the promoters in respect of losses occasioned by his belief in the prospectus, he must show some direct connection between them and himself in the communication of the prospectus and its influence upon his conduct in becoming an allottee. In the disposition of this case Lord Cairns took occasion to say:

"Now. my Lords, I ask the question: How can the directors of a company be liable, after the full original allotment of shares, for all the subsequent dealings which may take place with regard to those shares upon the Stock Exchange? If the argument of the appellant is right, they must be liable ad infinitum, for I know no means of pointing out any time at which the liability would in point of fact cease. Not only so, but, if the argument be right, they must be liable, no matter what the premium may be at which the shares may be sold. That premium may rise from time to time from circumstances altogether unconnected with the prospectus, and yet, if the argument be right, the appellant would be entitled to call upon the directors to indemnify him up to the highest point at which the shares may be sold for all that he may expend in buying the shares. My Lords, I ask, is there any authority for this proposition? I am aware of none."

Peek v. Gurney has been repeatedly cited as an authority in the decisions of the courts of this state, and is undoubtedly the law of this state. See Brackett v. Griswold, 112 N. Y. 470, 20 N. E. 376; Kuelling v. Lane Mfg. Co., 183 N. Y. 78, 75 N. E. 1098, 2 L. R. A. (N. S.) 303, 111 Am. St. Rep. 691; Squiers v. Thompson, 73 App. Div. 555, 67 N. E. 734. One of the essential elements necessary to sustain actions of this nature is that the false representations made should have been intended to influence the action of the particular person defrauded, or the action of a class of which he is a constituent member. "To sustain such an action, misrepresentations must have been made to the plaintiff individually, or as one of a class to whom they are in fact addressed, or have been intended to influence his

conduct in the particulars of which he complains." Hunnewell v. Duxbury, 154 Mass. 288, 28 N. E. 267, 13 L. R. A. 733. In the case of Nash v. Minnesota Title Ins. & Trust Company, 159 Mass. 438, 34 N. E. 625, the court held that where a letter was addressed to a broker containing alleged false representations, and was designed and intended to be used by the broker in selling certain bonds, the writer became liable in so far as the use of the letter influenced purchasers of bonds from the broker, but that the writer was not liable where the broker first sold to a purchaser and that purchaser, in turn, sold on his own account to the plaintiff. The court said:

"We are of the opinion that the letter was not intended to be used by purchasers of bonds to aid them in selling bonds to others. A use of the letter for such a purpose would be unauthorized, for the letter was not written to go with the bonds and to be passed from one to another as often as the bonds should be transferred."

This case cites Peek v. Gurney as an authority. Judge Lutron said in Hindman v. First National Bank, 112 Fed. 943, 50 C. C. A. 635, 57 L. R. A. 108, that "it was never meant to decide in Peek v. Gurney that a company's prospectus might not be broad enough to stand not only as an invitation to original allottees, but to all others who might be disposed to deal in the company's shares"; but he adds: "The true inquiry is, who did the bank design to influence by its false representations?" We think a close study and analysis of the leading New York cases all point to this test of intention as to whether or not the authors and circulators of false prospectus shall be held liable for the consequences of their acts. How the representations reached the plaintiff (whether directly or indirectly) and from whom he purchased his stock is immaterial, if, in fact, it was the purpose and intent of the defendants to deceive the plaintiff and influencing him to act.

With these principles and distinctions in mind, we take up for consideration the prospectus alleged to be false. As already stated, it purports on it face to be simply an invitation to the public to subscribe for an issue of bonds of the shipbuilding company. No one is asked to subscribe for a share of stock. On its face it was apparently intended to influence investors in the bonds of the company and only those who might subscribe by application direct to the Trust Company of the Republic or to the bankers specially designated in various cities as authorized to receive subscriptions for the bonds. On the face of the prospectus, we cannot see how the plaintiff can base any right of action against the defendants for deceit in buying the stock of the shipbuilding company, for he was not the person addressed or intended to be influenced by it. If, therefore, the plaintiff were to rest his case simply upon proof that the defendants had issued this prospectus knowing it to be false, and that he, the plaintiff, acting upon the statements therein contained, had purchased stock to his injury, the plaintiff could not recover. The complaint, however, goes further, and alleges that the prospectus was prepared and issued "with intent that the statements contained in said prospectus should be believed and relied on by the public and by the plaintiff, and that the public and the plaintiff should be thereby induced to purchase

the bonds and stocks of the shipbuilding company." The prospectus itself does not on its face appear to justify the allegations of the complaint in this respect. Nevertheless we do not think this court can on the argument of this demurrer hold as matter of law that the prospectus absolutely negatives the other allegations of the complaint. Suppose the plaintiff were able to show that the stock of the shipbuilding company had been listed on the exchange and the defendants as holders of large blocks of the stock desired to dispose of it on the Stock Exchange, and it was agreed between the defendants that the best method of creating a demand and sale of the stock was by the wholesale distribution of this identical prospectus, calling attention to the alleged merits of the enterprise, although ostensibly asking for subscriptions to bonds of the company. We think such evidence would be competent under the allegations of the complaint, and, if true, would render the defendants liable for the damages suffered. We cannot anticipate the plaintiff's proof to support the allegations of the complaint on the trial. It may be that his evidence will fail to square with those allegations, but for the purposes of a demurrer we must assume that every allegation contained in his complaint is true and capable of being established by evidence. Where the demurrer is upon the ground that the complaint does not state facts sufficient to constitute a cause of action, it must be assumed that all of the facts alleged in the complaint, as well as those that may be inferred or implied therefrom by reasonable and fair intendment, are true. Hall v. Gilman, 77 App. Div. 461, 79 N. Y. Supp. 303; Coatsworth v. Lehigh Valley R. Co., 156 N. Y. 451, 51 N. E. 301. We do not differ with the defendants in their contention as to the principles of law which obtain, but rather to the application of those principles in view of the affirmative allegations of the complaint.

For these reasons, the demurrers must be overruled, with leave to the defendants to answer within 20 days after service of a copy of the interlocutory judgment to be entered hereon upon payment of costs of this demurrer. So ordered.