Thomas Tindle et al., Appellants, v. Clarence T. Birkett, Respondent.

Mercantile Agency — False Statements Made Thereto for Purpose of Obtaining Credit — Party Injured Thereby May Maintain Action for Fraud against Person Who Made the Statements. Where a member of a firm knowingly made false and fraudulent statements in writing to a mercantile agency regarding the financial condition and assets of his firm for the purpose of obtaining a favorable rating for it in the reference books furnished by the agency to its subscribers, a subscriber to such agency who, relying solely upon such rating and without any other knowledge, sells on credit and delivers goods to such firm, the members of which were adjudged bankrupts upon their own petition before the goods were paid for, may maintain an action for obtaining the goods by fraud and deceit, although the statements were not made to the vendors personally and directly, but to the agency, and they never saw them, but only the result of them as embodied in the rating.

*Tindle v. Birkett*, 57 App. Div. 450, reversed.

(Argued May 16, 1902; decided June 17, 1902.)

Appeal from a judgment of the Appellate Division of the Supreme Court in the fourth judicial department, entered February 26, 1901, affirming a judgment in favor of defendant entered upon a dismissal of the complaint by the court at a Trial Term.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Frank Gibbons* for appellants. The defendant is liable, if the representations which he made contributed in any degree to induce the party to act, no matter what other influence, facts or representations may have also contributed to so induce him. (*Shaw* v. *Stine*, 8 Bosw. 157; *Morris* v. *Wells*, 26 N. Y. S. R. 11; *Kley* v. *Healy*, 127 N. Y. 555; *Hubbard* v. *Briggs*, 31 N. Y. 518; *Morgan* v. *Skiddy*, 62 N. Y. 319; *Weeks* v. *Cornwell*, 38 Hun, 575; *Eaton* v. *Avery*, 83 N. Y. 31; *Bliss* v. *Sickles*, 142 N. Y. 647.) A person furnishing information to a mercantile agency, as to his means and pecuniary responsibility, is to be presumed to have done so to enable the agency to communicate the information to persons inter-

ested, for their guidance in giving him credit. (*Eaton* v. *Avery*, 83 N. Y. 31.) A merchant may rely upon a statement given to a mercantile agency although the statement itself is not communicated. (*Converse* v. *Sickles*, 17 Misc. Rep. 169; *N. C. Co.* v. *Babcock*, 22 Hun, 481; *Altman* v. *Carr*, 42 S. W. Rep. 614.)

*J. Murray Downs* and *Thomas Carmody* for respondent. The ratings given Russell & Birkett by Dun & Co. and by Bradstreet were not based upon statements made by Russell & Birkett to these agencies. (*Eaton* v. *Avery*, 83 N. Y. 31; *Victor* v. *Henlien*, 33 Hun, 550.) Even if the statements to the commercial agencies were false when made, and made with fraudulent intent, the plaintiffs cannot succeed, inasmuch as none of these statements was ever seen by them, nor had they any knowledge that any statement whatever had been made by Russell & Birkett to the agencies. (*Eaton* v. *Avery*, 83 N. Y. 31; *Macullar* v. *McKinley*, 99 N. Y. 353; *Converse* v. *Sickles*, 17 Misc. Rep. 169; *Bradley* v. *S. Nat. Bank*, 46 App. Div. 550; *N. C. Co.* v. *Babcock*, 22 Hun, 481; *Altman* v. *Carr*, 42 S. W. Rep. 614; *Victor* v. *Henlien*, 33 Hun, 550.) It is essential not only that the statement be false when made, but it must be shown that the vendor relied upon it, believing it to be true. (*Taylor* v. *Guest*, 58 N. Y. 262; *Oberlander* v. *Spiess*, 45 N. Y. 175.) The length of time that elapsed from the receipt of the statements by the mercantile agencies to the date of the sale of the goods in question render inoperative such statements, even if fraudulent when made. (*Macullar* v. *McKinley*, 99 N. Y. 353; *Eaton* v. *Avery*, 83 N. Y. 31; *Bradley* v. *S. Nat. Bank*, 46 App. Div. 550; *Humphrey* v. *Smith*, 7 App. Div. 442; *Bliss* v. *Sickles*, 50 N. Y. S. R. 139; *N. C. Co.* v. *Babcock*, 22 Hun, 481; *Sharpless* v. *Gurney*, 166 Penn. St. 199.) The evidence does not show any fraudulent intent on the part of Russell & Birkett in making the statement to Dun & Co. and to Bradstreet. (*Morris* v. *Talcott*, 96 N. Y. 100; *Nichols* v. *Pinner*, 18 N. Y. 295; *Bradley* v. *S. Nat. Bank*, 46 App. Div. 550.)

O'BRIEN, J. The plaintiffs sought to recover in an action based upon allegations of fraud and deceit practiced upon them by the defendant, the price of three bills of goods which they were induced by such fraud to sell to a firm of dealers of which the defendant was a member. The firm was composed of the defendant and another person who died before the trial, and by an order of the court the action was continued against the defendant. At the trial before the court and a jury the plaintiffs were nonsuited and their counsel excepted and this exception presents the question of law in the case. The judgment was affirmed on appeal.

There is practically no dispute about the facts and the question presented by the appeal is whether the plaintiffs' proof did not sustain or tend to sustain the action. The three bills of goods were sold and delivered by the plaintiffs to the firm at the following dates respectively: November 30, 1898, January 24, 1899, and March 25th, 1899, and amounted in the aggregate to $901.86. On the 15th day of April following the last sale both of the members of the firm were adjudged bankrupts on their own petition in the Federal court. About eighteen months prior to filing the petition and on the 16th of September, 1897, the defendant, for the purpose of securing a rating by the mercantile agency of R. G. Dun & Co., made and delivered to that agency a statement in writing as to the financial condition of the firm, which showed net assets of $152,858.22. More than a year thereafter and on the 2d day of November, 1898, in reply to a request from the agency, the defendant wrote a letter in which he practically reiterated his former statement and added that the business of the firm was "large, increasing and profitable." Still later and on March 9th, 1899, just before the purchase of the last two bills of goods from the plaintiffs, a representative of the agency called upon the defendant personally and received from him a verbal statement that there had been no material change in the financial condition of the firm. The agency gave the firm a rating of from $125,000 to $200,000, which was maintained and never changed. Sub-

stantially the same rating was given to the firm by the Brad-street agency upon like statements and representations, though made at an earlier date, and the defendant at all times knew that the credit of the firm was so rated in the reference books sent by these agencies to merchants and business people. The plaintiffs had and used these reference books of both agencies in their business, and when defendant applied for credit they consulted these books and in reliance on the correctness of the rating, without any other knowledge, sold and delivered the goods in question upon credit. The statements upon which these ratings were given, at least as to the Dun agency, were grossly false. The learned court below correctly described this phase of the case in these words which we can very well adopt:

"That the statements upon which the rating of the defendant's firm was based by the mercantile agency of R. G. Dun & Co. were grossly false, and that the plaintiffs relied upon such rating in giving the firm credit for the goods purchased upon the several occasions mentioned, are facts concerning which there is and can be no serious dispute, and had such statements been made directly to the plaintiffs under circumstances which would fairly warrant the assumption that they were so made by way of inducing credit, there would, of course, be no question as to the right of the plaintiffs to maintain an action of this character."

But the learned court held that since these false and fraudulent statements were not made to the plaintiffs personally and directly by the defendant, but to the agencies, and since the plaintiffs never saw the statements themselves, but only the result of them in the reference books, the action could not be maintained. That one merchant may defraud another under modern business methods just as effectually by a false and fraudulent statement to a commercial agency as in any other way no one can doubt. That the defendant did actually deceive and defraud the plaintiffs by thus putting into circulation in the business world a false, fraudulent and fictitious rating purporting to express his true commercial stand-

ing and financial ability is equally clear. Disregarding mere forms and methods, it cannot be doubted that the defendant spoke false and deceitful words to the plaintiffs through the agency just as effectually as if they had met face to face and the statements had been made directly and personally. The buyer of goods may become liable to the seller in fraud, although they have never met or seen each other, and no personal communication that is false or fraudulent has passed between them. If the former does just what this defendant did and procures a fraudulent rating, intending that it should be published to the business community and taken as true, that is a fraud upon the person who relies and acts upon it to his damage. But it is not necessary to argue this question as an original one since it has been deliberately decided by this court.

In *Eaton, C. & B. Co.* v. *Avery* (83 N. Y. 31) it was held that when a member of a firm makes statements to a commercial agency, which he knows to be false as to the financial condition of the firm, with the intent that the statements shall be communicated to persons interested in ascertaining the pecuniary responsibility of the firm, intending thus to procure credit and to defraud such persons, and such statements are communicated to one who in reliance thereon sells goods to the firm on credit, an action for deceit may be maintained against the buyer of the goods in favor of the seller who has suffered by the fraud. That decision is controlling in the case at bar, since the two cases are almost identical in their facts, and all the objections urged by the learned court below to a recovery in this case were fully answered upon principle and authority. The court states that the case was new in its facts but old in the principle involved, and the cases cited sustain the statement. The same principle was decided in a more recent case. (*Bliss* v. *Sickles*, 142 N. Y. 647.)

The objections urged to a recovery in a case like this are quite untenable. It is said that it would put business men at the mercy of commercial agencies. No one need have any fears of that, since no business man can be affected unless he

makes use of such an agency to give information to the business world of his financial condition in order to show that he is worthy of credit, and then it is impossible to harm him unless he makes statements that he knows to be false for a fraudulent purpose, and if he does, there is no reason why he should not respond to one who has suffered thereby. So, also, it is said that these agencies procure information from other sources than the statement of parties seeking credit. That may be so, but there is little danger that any one will be made liable in fraud for false statements other than his own. If the defendant in this case could show that he never made the statements referred to he would have little difficulty in defeating this action notwithstanding the high rating in the reference books. A party who is really innocent can always protect himself against the unauthorized statements of others. In this case there was clearly a false and excessive rating which was justified by the statements made by the defendant, and it is admitted that these statements were false and fraudulent and that the plaintiffs relied upon the rating in giving the credit. Clearly, this state of facts is a sufficient basis for a charge of fraud and deceit. The proof was certainly sufficient to carry the case to the jury and hence the plaintiffs were improperly nonsuited.

The judgment should be reversed and a new trial granted, costs to abide the event.

Bartlett, J. I agree with the result reached in the prevailing opinion for reversal. It was clearly error for the trial judge to nonsuit the plaintiffs, and the affirmance of the judgment entered thereon by the Appellate Division cannot be sustained.

I am of the opinion, however, that we should deal with the question that induced the Appellate Division to sustain the the nonsuit. In the opinion of that learned court it is said : "Mercantile agencies do not always base their rating of a person's responsibility solely upon information obtained from the individual himself. Upon the contrary, it is well understood

that they obtain such information from various sources, and this is especially true in cases where, as it often happens, a business man, for various reasons best known to himself, declines to furnish the public with any statement of his financial condition."

It seems to be conceded that the defendant made representations to the mercantile agency of R. G. Dun & Company that were grossly false and calculated to mislead the plaintiffs, who consulted the ratings given to defendant by that agency.

The Appellate Division seems to have held that the plaintiffs were not authorized to rely upon these ratings for the reason that they were based upon the representations of the defendant and also upon information received as to defendant's commercial standing from outside sources.

The opinion of the court below further states: "It follows, therefore, that, if the rule contended for by the plaintiffs were to obtain, a trader who has made a report to a mercantile agency as to his pecuniary standing might be held liable to arrest and imprisonment for the rating, which, although based in part thereon, was nevertheless due in a much larger measure to information obtained from a business rival, a personal enemy or some other equally unreliable source."

If the fact that the commercial agencies of the country base their ratings of merchants not only upon the representations of the latter, but upon information obtained from other sources, renders such ratings unavailable to persons contemplating the giving of credit, the information obtained by these agencies would be of little value.

I am of opinion that the plaintiffs were entitled to submit to the jury the question whether the grossly false representations made by the defendant to the mercantile agency were one of the causes, if not the sole inducing cause, which led to the sale of the goods in question. (*Morgan* v. *Skiddy*, 62 N. Y. 319.)

In the case of *Hubbard* v. *Briggs* (31 N. Y. 518), which was an action to recover damages for an alleged fraud, which

consisted in making false representations concerning the sound-
ness and solvency of the Miller's Bank of Clyde, whereby the
plaintiff was induced to subscribe fifty-three hundred dollars
to the stock of that corporation and to give his bond and mort-
gage for the amount of his subscription, this court said (p. 532):
" It was enough to have sustained the action against the
defendant for the jury to have found that the plaintiff was
moved by his representations so that without them he would
not have subscribed for the stock, although representations
made by others had also influence upon his mind. It could
not be affirmed, as matter of law, upon the proof in the case
that the defendant's affirmations were not the inducing cause
of the plaintiff's subscription, and, if not, the question properly
belonged to the jury to determine."

It is competent for a plaintiff, who has been induced to sell
goods in reliance upon the ratings of a mercantile agency, to
show if he can by its officer the precise character of the rep-
resentations made to it by the debtor, and such information as
it may have obtained from other sources; also, to follow this
up by proof that these representations were one of the inducing
causes that led to the sale. If this question of fact is properly
submitted to the jury upon competent evidence, there will be
no danger that a trader will be subjected to arrest and impris-
onment for a rating resting upon the representations of a
business rival, a personal enemy, or a third party, having no
interest in the transaction.

Vann, J. (dissenting). The rating of a mercantile agency
is merely its conclusion as to the financial status of the person
to whom it relates. In this case, the conclusion was based
partly upon statements furnished by the defendant and partly
upon information derived from other sources. There had
been a long course of dealing between the parties, and the
statements made by the defendant, which included an itemized
enumeration of assets and liabilities, were not communicated
to the plaintiffs, and were neither known to nor relied upon
by them when they gave the credit. It is not only unsafe,

but a violation of sound principles, to permit a recovery for deceit, with the severe consequences that may follow, unless the evidence connects the false statements directly with the person alleged to have practiced the deceit, or with his duly authorized agent acting within the scope of his authority. A mercantile agency is not such an agent as to make its mere inference as to the effect of the debtor's statements binding upon him. Its authority, so far as he is concerned, is limited to the transmission of his statement, as made by him, or the substance thereof, to its subscribers. When it gives its opinion, simply, it does not act as his agent, but as the agent of the subscriber. In *Eaton, C. & B. Co.* v. *Avery* (83 N. Y. 31) the statements made by the purchaser were communicated to the seller, not the mere rating of the agency, and this court said : " By making a statement as to the financial condition of his firm to such an agency he virtually instructed it what to say if inquired of ; " that is, the agency should report what the purchaser said, not its conclusion as to the effect of what he said. Commenting upon that case, we said in *Macullar* v. *McKinley* (99 N. Y. 353, 358), " there was a direct and an intended connection between the representation and the credit obtained." So in *Bliss* v. *Sickles* (142 N. Y. 647) the detailed statement in writing, made by the purchaser, reached the seller through a third person, to whom it was made for that purpose, and thus became the direct foundation of the credit given.

The tender regard which the law has for personal liberty will not permit the arrest and imprisonment of a citizen upon the mere rating of a commercial agency, without any communication of the facts, as stated by him, upon which the rating was based.

I dissent from the judgment about to be pronounced and vote to affirm for the reasons given by the Appellate Division in its opinion.

PARKER, Ch. J., GRAY, HAIGHT, MARTIN, JJ. (and BARTLETT, J., in memorandum), concur with O'BRIEN, J. ; VANN, J., dissents.

Judgment reversed, etc.