■ JOHN BLAIR COMMUNICATIONS, INC., et al., Appellants, v RELIANCE CAPITAL GROUP, L.P., et al., Defendants, and TOUCHE ROSS & CO., Respondent. (And a Third-Party Action.)—Order, Supreme Court, New York County (Shirley Fingerhood, J.), entered March 16, 1989, which granted defendant-respondent Touche Ross & Co.'s motion for dismissal, or in the alternative, for summary judgment, unanimously reversed, to the extent appealed from, on the law, and defendant's motion for summary judgment denied, and the complaint reinstated against said defendant, with costs.

This litigation arises out of defendant Reliance Capital Group's (Reliance) 1987 sale to JHR Acquisition Corp. (JHR) of the assets of the TV Rep and Entertainment Divisions of John Blair & Co. (Old Blair), along with the sale of the rights to the name "John Blair & Co." The plaintiffs herein are the successors in interest to JHR, having paid $115 million for the subject divisions. Plaintiffs contend that due to defendants' fraud, breach of warranty and negligence, the price was excessive by $30 million; they also claim that defendant Touche Ross & Co. (Touche), a "Big Eight" certified public accounting firm which was defendant Reliance's auditor, fraudulently and negligently misrepresented certain financial information relied upon by plaintiffs in making the purchase.*

---

* There are six defendants in total in the current litigation. They include the four Reliance entities, their affiliate Telemondo Group, Inc., and Touche. Four causes of action were brought against the Reliance defendants, two against Touche.

Plaintiffs specifically argue that Touche committed the alleged fraudulent and negligent misrepresentations in December 1986 when it "certified the divisions' financial statements as accurate" and confirmed the value of the assets of the subject divisions. The record reflects that the financial statements were indeed misleading and substantially inflated the value of the subject divisions.

All six defendants moved for an order dismissing the complaint or, in the alternative, for summary judgment. The IAS court granted the motion solely as to defendant Touche. The court stated that "plaintiffs have not demonstrated a relationship with Touche Ross sufficient to sustain the claims against them." The premise relied upon in arriving at this conclusion was that there was no privity of contract or relationship sufficiently close so as to be the functional equivalent of privity between Touche and plaintiffs, because "there is no allegation that Touche Ross prepared the reports for plaintiffs' use or according to plaintiffs' requirements, or that Touche Ross specifically agreed to provide plaintiffs with copies of the report or did so. Touche Ross denied sending the report to them. In short, plaintiff *[sic]* have not demonstrated a relationship with Touche Ross sufficient to sustain the claims against them."

We disagree and conclude that plaintiffs have offered sufficient evidence to establish a "relationship sufficiently approaching privity between [them] and the account[ing firm]". *(Iselin & Co. v Mann Judd Landau,* 71 NY2d 420, 423 [1988].) The Court of Appeals, in *Credit Alliance Corp. v Andersen & Co.* (65 NY2d 536 [1985]), set forth the criteria which must be met in order to hold accountants liable in negligence to noncontractual parties who rely to their detriment on inaccurate financial reports. These elements are: "(1) the accountants must have been aware that the financial reports were to be used for a particular purpose or purposes; (2) in the furtherance of which a known party or parties was intended to rely; and (3) there must have been some conduct on the part of the accountants linking them to that party or parties, which evinces the accountants' understanding of that party or parties' reliance." *(Credit Alliance Corp. v Andersen & Co.,* 65 NY2d, *supra,* at 551.)

The record herein amply demonstrates that plaintiffs have satisfied all three criteria of the *Credit Alliance Corp.* test. First, it is clear that Touche was aware that Reliance in-

tended to sell the subject divisions. This was the first audit where Touche was asked to separately audit the subject divisions, alerting it that a sale of the divisions was contemplated. In fact, members of the Touche audit team were expressly told, in person, by a representative of JHR, that JHR was contemplating purchasing the divisions. *(See, European Am. Bank & Trust Co. v Strauhs & Kaye,* 102 AD2d 776, 777, *affd* 65 NY2d 536 [1985].)

Second, plaintiffs have sufficiently showed that Touche was aware that they were going to use and rely upon the financial statements for the specific purpose of evaluating the opportunity to purchase the divisions and determining an appropriate price for the purchase. This is beyond dispute, particularly given that the Touche audit team had several meetings with JHR representatives to discuss the audits. Moreover, the record reflects that Touche knew that the audited financial statements would be explicitly incorporated by reference into the representation and warranty section of the final asset purchase agreement and that the financial statements would be annexed thereto.

Third, we are persuaded that Touche engaged in conduct sufficient to establish a "bond between them so close as to be the functional equivalent of contractual privity." *(Ossining Union Free School Dist. v Anderson LaRocca Anderson,* 73 NY2d 417, 419 [1989].)* Aside from the meetings between the parties, plaintiffs present no less than 20 specific allegations in support of their argument that such a relationship existed. Thus, this is a case where "the services of the account[ing firm] were not extended to a faceless or unresolved class of persons, but rather to a known group * * * marked by a definable limit and made up of certain components". *(White v Guarente,* 43 NY2d 356, 361 [1977].)*

Insofar as the claim of intentional fraud is concerned, we note that privity or a relationship which is the functional equivalent of privity is not an element of intentional fraud. *(Uniflex, Inc. v Olivetti Corp.,* 86 AD2d 538, 539 [1st Dept 1982].)* Rather, a party who commits intentional fraud is liable to any person who is intended to rely upon the misrepresentation or omission and who does in fact so rely to his detriment. *(See, Tindle v Birkett,* 171 NY 520, 524-525 [1902].)*

We therefore conclude that plaintiffs have pleaded and demonstrated facts sufficient to support the causes of action raised against Touche and that the IAS court erred in grant-

ing Touche summary judgment and dismissing the complaint against it.

Accordingly, the order appealed from is reversed, to the extent appealed from, and summary judgment denied, and the complaint reinstated. Concur—Sullivan, J. P., Carro, Milonas and Wallach, JJ.