**SECURITIES INVESTOR PROTECTION CORPORATION and James W. Giddens, as trustee for the liquidation of the business of A.R. Baron & Co., Inc., Plaintiffs–Appellants,**

v.

**BDO SEIDMAN, LLP, Defendant–Appellee.**

**Nos. 99–7719(L), 99–7720(L).**

United States Court of Appeals, Second Circuit.

Argued Feb. 9, 2000.

Decided: April 2, 2001.

Kenneth J. Caputo, (Stephen P. Harbeck, on the brief), Washington, DC, for Plaintiff–Appellant, Securities Investor Protection Corporation.

James B. Kobak, Jr., Hughes Hubbard & Reed LLP, (Daniel H. Weiner, on the brief), New York, NY, for Plaintiff–Appellant James W. Giddens, as Trustee for the liquidation of the business of A.R. Baron & Co., Inc.

Michael R. Young, Willkie Farr & Gallagher, (Jeffrey O. Grossman, Willkie Farr & Gallagher; Scott M. Univer & Barbara A. Taylor, BDO Seidman, LLP, on the brief), New York, NY, for Defendant–Appellee.

Before: MESKILL and SOTOMAYOR, Circuit Judges, and KEENAN, District Judge.*

PER CURIAM:

This is the second occasion on which we address this appeal of a judgment of the United States District Court for the Southern District of New York (Loretta A. Preska, *Judge* ) dismissing plaintiffs-appellant's claims for breach of contract, fraudulent misrepresentation, and negligent misrepresentation against defendant-appellee BDO Seidman, LLP ("Seidman"), the independent certified public accountant for se-

---

* The Honorable John F. Keenan, of the United States District Court for the Southern District of New York, sitting by designation.

curities broker-dealer A.R. Baron & Co. ("Baron"). Plaintiffs-appellants Securities Investor Protection Corporation ("SIPC") and James W. Giddens, as trustee for the liquidation of Baron (the "Trustee") alleged that Seidman's filing of false audit reports on behalf of Seidman caused financial damage both to Baron's customers and to SIPC itself. SIPC sued both for its own damages and, as subrogee of the claims of Baron's customers claims against Seidman, for their damages as well. The Trustee sued for Baron's customers' damages as their representative in liquidation proceedings. The district court (i) dismissed SIPC's claims on its own behalf for lack of standing, and (ii) dismissed SIPC's and the Trustee's claims on behalf of Baron's customers for failure to state a claim upon which relief could be granted. *Securities Investor Protection Corp. v. BDO Seidman, LLP*, 49 F.Supp.2d 644, 653, 655–57 (S.D.N.Y.1999).

In our prior opinion, we affirmed the district court's dismissal of the claims brought by both plaintiffs on behalf of Baron's customers. *Securities Investor Protection Corp. v. BDO Seidman, LLP*, 222 F.3d 63, 71–76 (2d Cir.2000). We disagreed, however, with the district court's holding that SIPC lacked standing to sue on its own behalf. *Id.* at 69–71. We were thus presented with the question of whether SIPC's claims on it own behalf are claims for which relief could be granted under New York law. Finding that these claims raised issues that had not been clearly resolved by New York caselaw, and that resolution of these issues required a delicate balancing of state policy concerns, *id.* at 76–82, we certified the following two questions to the Court of Appeals:

1. May a plaintiff recover against an accountant for fraudulent misrepresentations made to a third party where the third party did not communicate those misrepresentations to the plaintiff, but where the defendant knew that the third party was required to communicate any negative information to the plaintiff and the plaintiff relied to his detriment on the absence of any such communication?

2. May a plaintiff recover against an accountant for negligent misrepresentations where the plaintiff had only minimal direct contact with the accountant, but where the transmittal to the plaintiff of any negative information the accountant reported was the "end and aim" of the accountant's performance?

*Id.* at 81.

The Court of Appeals has answered both questions in the negative. *Securities Investor Protection Corp. v. BDO Seidman, LLP*, 95 N.Y.2d 702, 723 N.Y.S.2d 750, 746 N.E.2d 1042 (2001) (attached here as an appendix). Accordingly, we affirm the district court's dismissal of SIPC's claims on its own behalf, albeit on a slightly different ground. *See Shumway v. United Parcel Serv., Inc.*, 118 F.3d 60, 63 (2d Cir.1997).

Because no other issues remain to be resolved, the judgment of the district court is hereby **AFFIRMED.**

## APPENDIX

### COURT OF APPEALS

STATE OF NEW YORK

. . . . .

The Hon. Judith S. Kaye, Chief Judge, Presiding

USCOA,2 No. 120

. . . . .

SECURITIES INVESTOR PROTECTION CORPORATION, and JAMES W. GIDDENS, as Trustee for the liquidation of the business of A.R. Baron & Co., Inc., APPELLANTS,

-v.-

BDO SEIDMAN, LLP, RESPONDENT.

. . . . .

SECURITIES INVESTOR PROTECTION CORPORATION APPEARED BY STEPHEN P. HARBECK, ESQ., GENERAL COUNSEL; JAMES W. GIDDENS APPEARED BY HUGHES HUBBARD & REED, LLP; BDO SEIDMAN, LLP APPEARED BY WILLKIE FARR & GALLAGHER, ESQS.

THE COURT, AFTER DUE DELIBERATION, ORDER AND ADJUDGES THAT CERTIFICATION OF QUESTIONS BY THE UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT, PURSUANT TO SECTION 500.17 OF THIS COURT'S RULES OF PRACTICE, ACCEPTED AND THE ISSUES PRESENTED ARE TO BE CONSIDERED AFTER BRIEFING AND ARGUMENT. CHIEF JUDGE KAYE AND JUDGES BELLACOSA, SMITH, LEVINE, CIPARICK, WESLEY AND ROSENBLATT CONCUR.

*STUART M. COHEN*

STUART M. COHEN, CLERK OF THE COURT COURT OF APPEALS, CLERK'S OFFICE, ALBANY, JUNE 29, 2000

COURT OF APPEALS

STATE OF NEW YORK

THE HON. JUDITH S. KAYE, CHIEF JUDGE, PRESIDING

USCOA,2 No. 11

SECURITIES INVESTOR PROTECTION CORPORATION AND JAMES W. GIDDENS, AS TRUSTEE FOR THE LIQUIDATION OF THE BUSINESS OF A.R. BARON & CO., INC.,

APPELLANTS,

-v.-

BDO SEIDMAN, LLP,

RESPONDENT.

SECURITIES INVESTOR PROTECTION CORPORATION APPEARED BY STEPHEN P. HARBECK, ESQ., GENERAL COUNSEL AND KALKINES ARKY ZALL

& BERNSTEIN, LLP; JAMES W. GIDDENS, AS TRUSTEE FOR THE LIQUIDATION OF THE BUSINESS OF A.R. BARON & CO., INC. APPEARED BY HUGHES HUBBARD & REED, LLP; BDO SEIDMAN, LLP APPEARED PRO SE AND BY WILLKIE FARR & GALLAGHER, ESQS.; AND AMICI CURIAE APPEARED BY VEDDER PRICE KAUFMAN & KAMMHOLZ; ALLEGAERT BERGER & VOGEL, LLP AND RICHARD I. MILLER, ESQ.

THE COURT, AFTER DUE DELIBERATION, ORDERS AND ADJUDGES THAT FOLLOWING CERTIFICATION OF QUESTIONS BY THE UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT AND ACCEPTANCE OF THE QUESTIONS BY THIS COURT PURSUANT TO SECTION 500.17 OF THE RULES OF PRACTICE OF THE NEW YORK STATE COURT OF APPEALS, AND AFTER HEARING ARGUMENT BY COUNSEL FOR THE PARTIES AND CONSIDERATION OF THE BRIEFS AND THE RECORD SUBMITTED, CERTIFIED QUESTIONS, IN THE CONTEXT OF THE FACTS AND CIRCUMSTANCES PRESENTED, ANSWERED IN THE NEGATIVE. OPINION BY JUDGE CIPARICK. CHIEF JUDGE KAYE AND JUDGES SMITH, LEVINE, WESLEY, ROSENBLATT AND GRAFFEO CONCUR.

THE COURT FURTHER ORDERS THAT THE RECORD OF THE PROCEEDINGS FILED HEREIN BE RETURNED TO THE UNITED STATES COURT OF APPEALS, SECOND CIRCUIT.

*STUART M. COHEN*

STUART M. COHEN, CLERK OF THE COURT

COURT OF APPEALS, CLERK'S OFFICE, ALBANY,

February 20, 2001

COURT OF APPEALS

STATE OF NEW YORK

USCOA, 2 No. 11

SECURITIES INVESTOR PROTECTION CORPORATION AND JAMES W. GIDDENS, AS TRUSTEE FOR

THE LIQUIDATION OF THE BUSINESS OF A.R. BARON & CO., INC.,

APPELLANTS,

-v.-

BDO SEIDMAN, LLP,

RESPONDENT.

KENNETH J. CAPUTO, FOR APPELLANT SECURITIES INVESTOR.

MICHAEL R. YOUNG, FOR RESPONDENT.

NEW YORK STATE SOCIETY OF CERTIFIED PUBLIC ACCOUNTANTS; AMERICAN INSTITUTE OF CERTIFIED PUBLIC ACCOUNTANTS, AMICI CURIAE.

CIPARICK, J.:

ONCE AGAIN WE ARE CALLED UPON TO CONSIDER THE SCOPE OF AN ACCOUNTANT'S LIABILITY TO A NON-PRIVY THIRD PARTY FOR MISREPRESENTATIONS. THIS TIME THE ISSUES ARE PRESENTED, THROUGH CERTIFIED QUESTIONS, IN THE CONTEXT OF THE HEAVILY-REGULATED RELATIONSHIPS AMONG ACTORS IN THE FINANCIAL MARKETS.

PLAINTIFF SECURITIES INVESTOR PROTECTION CORPORATION (SIPC) CLAIMS THAT DEFENDANT BDO SEIDMAN (BDO), AN ACCOUNTING FIRM, FRAUDULENTLY OR NEGLIGENTLY MISINFORMED FEDERAL SECURITIES REGULATORS ABOUT THE PRECARIOUS FINANCIAL CONDITION OF BDO'S CLIENT A.R. BARON & CO, A NEW YORK-BASED STOCK BROKERAGE FIRM. DURING ITS FOUR YEARS OF OPERATION (1992–1996), BARON FILED ANNUAL FINANCIAL STATEMENTS WITH THE NATIONAL ASSOCIATION OF SECURITIES DEALERS (NASD) AS REQUIRED BY THE RULES OF THE SECURITIES AND EXCHANGE COMMISSION (17 CFR § 240.17A-5[D]). SEC RULES ALSO REQUIRED THAT BARON'S FINANCIAL STATEMENTS BE AUDITED BY AN INDEPENDENT CERTIFIED PUBLIC ACCOUNTANT (ID.). BARON HIRED BDO FOR THAT PURPOSE.

IN 1996, BARON FILED FOR BANKRUPTCY. A SUBSEQUENT INVESTIGATION REVEALED THAT BARON'S MANAGEMENT TEAM, LED BY ITS CHIEF EXECUTIVE OFFICER, ANDREW BRESSMAN, HAD ENGAGED IN CONDUCT THAT VIOLATED SECURITIES LAWS AND BROUGHT BARON TO THE BRINK OF FINANCIAL COLLAPSE. AS SIPC ALLEGES IN ITS COMPLAINT, BARON'S MANAGEMENT TEAM FRAUDULENTLY SOLD SECURITIES TO CUSTOMERS, MANIPULATED INITIAL PUBLIC OFFERINGS AND MANIPULATED TRADING IN THE AFTER-MARKET IN ORDER TO CREATE ARTIFICIALLY INFLATED STOCK VALUES. SIPC FURTHER ALLEGES THAT THESE AND OTHER CRIMINAL ACTS WERE DONE FOR THE PERSONAL GAIN OF MEMBERS OF BARON'S MANAGEMENT TEAM, THEIR FRIENDS AND OTHER INSIDERS. A NEW YORK GRAND JURY INDICTED THIRTEEN OF BARON'S EMPLOYEES AND ALL WERE CONVICTED OF CRIMES FOR ACTIVITIES WHILE AT THE BROKERAGE FIRM. BARON ITSELF PLEADED GUILTY TO ONE COUNT OF ENTERPRISE CORRUPTION.

SIPC ALLEGES THAT WHILE BARON'S MANAGERS WERE MISAPPROPRIATING COMPANY ASSETS, THEY WERE SIMULTANEOUSLY CONCEALING THE COMPANY'S GROWING DEBT BY HIDING ITS INVENTORY OF "HOUSE STOCKS" IN CUSTOMERS' ACCOUNTS OR AT OTHER BROKERAGE HOUSES. IT IS UNDISPUTED THAT BDO'S AUDIT REPORTS NEVER NOTED SUCH PRACTICES. AS REQUIRED BY SEC RULE, BDO ISSUED AN ANNUAL OPINION ASSESSING BARON'S INTERNAL BOOKKEEPING PRACTICES AND PROCEDURES FOR SAFEGUARDING SECURITIES (17 CFR § 240.17A 5[G] ). IN ITS OFFICIAL STATEMENTS FOR ALL FOUR YEARS OF BARON'S OPERATION, BDO NOTED NO MATERIAL WEAKNESSES WITH BARON'S INTERNAL CONTROLS OR PROCEDURES FOR SAFEGUARDING SECURITIES.

SIPC'S COMPLAINT FURTHER CHARGES THAT, BY FAILING TO PERFORM A PROPER AUDIT, BDO WAS ABLE TO CERTIFY THAT BARON MAINTAINED A HEALTHY RATIO OF DEBT TO NET CAPITAL. THE SEC PRESCRIBES THE RATIO OF DEBT THAT A BROKER MAY CARRY RELATIVE TO ITS READILY LIQUID CAPITAL (SEE, 17 CFR § 240.15c3–1). THIS "NET CAPITAL RULE" REQUIRES THAT A BROKER'S DEBT NOT EXCEED 15 TIMES THE AMOUNT OF LIQUID CAPITAL. IN FISCAL YEARS

1992, 1993 AND 1994 DEFENDANT'S AUDITS CERTIFIED THAT BARON'S DEBT WAS APPROXIMATELY EQUAL TO ITS NET CAPITAL, A FIGURE FAR BELOW SEC LIMITS. IT WAS NOT UNTIL ITS AUDIT FOR FISCAL YEAR 1995, ISSUED WEEKS BEFORE BARON DECLARED BANKRUPTCY, THAT BDO REPORTED FOR THE FIRST TIME THAT BARON'S DEBT EXCEEDED 15 TIMES ITS NET CAPITAL.

BDO ALSO INCLUDED AN "INDEPENDENT AUDITOR'S REPORT" WITH EACH OF ITS ANNUAL FILINGS (SEE, 17 CFR § 240.15A 5[J] ). THESE REPORTS SUPPLEMENTED THE OTHER DATA REQUIRED BY THE RULES. IN FISCAL YEAR 1993, THE AUDITOR'S REPORT NOTED THAT THE COMPANY HAD INCURRED SIGNIFICANT LOSSES FROM OPERATIONS WHICH RAISED SUBSTANTIAL DOUBTS AS TO THE ABILITY OF THE COMPANY TO CONTINUE AS A GOING CONCERN. THE 1993 AUDITOR'S REPORT ALSO NOTED THAT THE SEC HAD BEGUN AN INVESTIGATION OF BARON AND THAT BARON WAS IN ARBITRATION WITH SEVERAL OF ITS CUSTOMERS OVER LOSSES INCURRED.

THE 1994 AUDITOR'S REPORT ONCE AGAIN MENTIONED THE SEC'S ONGOING INVESTIGATION OF POSSIBLE SECURITIES LAWS VIOLATIONS, IN PARTICULAR THAT THE SEC SUSPECTED THAT BARON HAD ILLEGALLY MANIPULATED THE MARKET, HAD EXECUTED UNAUTHORIZED STOCK TRADES AND FAILED TO EXECUTE CUSTOMERS' SELL ORDERS, AND THAT THE SEC WAS CONSIDERING VARIOUS SANCTIONS AGAINST THE COMPANY. THE 1994 REPORT REVEALED THAT THE NASD WAS ALSO CONDUCTING AN INVESTIGATION OF BARON FOR IMPROPRIETIES RELATING TO ANOTHER SECURITY AND LIKEWISE CONSIDERING SANCTIONS AGAINST THE COMPANY. THE 1994 AUDITOR'S REPORT AGAIN MENTIONED THE CUSTOMERS' ARBITRATION PROCEEDINGS AGAINST BARON, WITH TOTAL CLAIMS EXCEEDING $10 MILLION. IN ITS LAST AUDITOR'S REPORT FOR FISCAL YEAR 1995, DEFENDANT REPEATED REFERENCE TO THE SEC INVESTIGATION, ADDED THAT CUSTOMER ARBITRATIONS AND LAWSUITS HAD GROWN TO CLAIMS EXCEEDING $80 MILLION AND THAT, AS A RESULT OF THE BANKRUPTCY OF

BARON'S CLEARING BROKER, BARON WAS IN DANGER OF BEING UNABLE TO COLLECT A RECEIVABLE OF OVER $3.3 MILLION.

THE AUDIT REPORTS PREPARED BY BDO WERE ALL SENT TO THE NASD AS THE REGULATORY ORGANIZATION DESIGNATED BY THE SEC TO OVERSEE BARON'S COMPLIANCE WITH SECURITIES LAWS (SEE,

15 USC § 78O 3). NONE OF BDO'S AUDIT REPORTS WERE SENT TO SIPC.

SIPC WAS CREATED BY THE SECURITIES INVESTOR PROTECTION ACT OF 1970 (SIPA)(15 USC § 78AAA-LLL) TO PROTECT CUSTOMERS OF BROKER-DEALERS AND MAINTAIN CONFIDENCE IN THE UNITED STATES SECURITIES MARKETS. THESE GOALS ARE ACCOMPLISHED IN TWO PRINCIPAL WAYS. FIRST, WHEN A BROKER IS IN OR APPROACHING FINANCIAL DIFFICULTY, SIPC HAS THE AUTHORITY TO PETITION THE COURTS FOR PROTECTION OF THE BROKER'S CUSTOMERS IN A "PROTECTIVE PROCEEDING." SUCH PROTECTION CAN INCLUDE THE COURT-ORDERED APPOINTMENT OF A TRUSTEE TO LIQUIDATE THE FIRM AND SATISFY CUSTOMER CLAIMS FROM THE PROCEEDS OF THE LIQUIDATION (15 USC § 78FFF). SECOND, SIPC IS ENDOWED WITH FUNDS RAISED BY ASSESSMENTS ON ITS MEMBERS, WHO ARE ALL THE BROKERS REGISTERED UNDER EXCHANGE ACT SECTION 15(B). FROM THESE FUNDS, SIPC CAN ADVANCE MONIES TO THE TRUSTEE TO SETTLE CLAIMS

(15 USC § 78FFF 3). AS A RESULT OF BDO'S ALLEGED MISSTATEMENTS, SIPC CLAIMS IT WAS REQUIRED TO SPEND OVER $2.5 MILLION SETTLING THE CLAIMS OF BARON'S CUSTOMERS AND $5.5 MILLION IN ADMINISTRATIVE FEES ASSOCIATED WITH BARON'S LIQUIDATION.

WHILE SIPC IS NOT AN AGENCY OF THE GOVERNMENT, THE SEC EXERCISES EXTENSIVE CONTROL OVER ITS BUSINESS AFFAIRS (SEE,

15 USC § 78CCC). SIPC DOES NOT HAVE INDEPENDENT INVESTIGATORY POWERS TO CERTIFY THE FINANCIAL HEALTH OF ITS MEMBERS. IT DOES NOT RECEIVE FINANCIAL STATEMENTS FROM ITS MEMBERS, MUCH LESS AUDIT THEM. NO

STATUTE OR RULE REQUIRES BROKERS TO SUBMIT THEIR AUDITED FINANCIAL STATEMENTS TO SIPC AS THEY ARE REQUIRED TO DO FOR THE SEC OR THE DESIGNATED SELF-REGULATORY ORGANIZATION, HERE THE NASD.

IN ORDER TO COMMENCE A "PROTECTIVE" PROCEEDING, SIPC MUST FIRST BE AWARE THAT A BROKER IS IN FINANCIAL DIFFICULTY. NOTICE TO SIPC IS CONTEMPLATED IN SECTION 78EEE OF SIPA. UNDER THAT SECTION, THE SEC OR ONE OF THE SELF-REGULATING ORGANIZATIONS, SUCH AS THE NASD, IS REQUIRED TO NOTIFY SIPC WHEN IT BECOMES "AWARE OF FACTS WHICH LEAD IT TO BELIEVE THAT ANY BROKER OR DEALER SUBJECT TO ITS REGULATION IS IN OR IS APPROACHING FINANCIAL DIFFICULTY" (15 USC § 78EEE[A][1] ). IN THE PRESENT CASE THE PLEADINGS DO NOT STATE HOW SIPC ULTIMATELY BECAME AWARE OF BARON'S FINANCIAL DIFFICULTIES IN 1996; HOWEVER, A PROTECTIVE PROCEEDING FOLLOWED AND JAMES GIDDENS WAS APPOINTED TRUSTEE FOR THE LIQUIDATION OF BARON.

BOTH GIDDENS AND SIPC COMMENCED THE PRESENT ACTION IN THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK. GIDDENS ASSERTED CLAIMS AGAINST BDO FOR NEGLIGENCE, FRAUD AND BREACH OF CONTRACT. SIPC ASSERTED CLAIMS FOR NEGLIGENCE AND FRAUD, BOTH AS SUBROGEE TO THE CLAIMS OF BARON'S CUSTOMERS AND ON ITS OWN BEHALF FOR THE ADMINISTRATIVE COSTS ASSOCIATED WITH THE LIQUIDATION. ON BDO'S MOTION, THE DISTRICT COURT DISMISSED THE COMPLAINT AS TO SIPC, CONCLUDING THAT SIPC DID NOT HAVE STANDING TO SUE ON ITS OWN BEHALF AND THAT THE ALLEGATIONS ON BEHALF OF BARON'S CUSTOMERS FAILED TO STATE CLAIMS FOR FRAUDULENT OR NEGLIGENT MISREPRESENTATION UNDER NEW YORK LAW. THE TRUSTEE'S CLAIMS WERE ALSO DISMISSED. THE UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT CONCLUDED THAT SIPC LACKED STANDING TO SUE ON BEHALF OF BARON'S CUSTOMERS BUT THAT IT COULD SUE ON ITS OWN BEHALF. THE COURT CERTIFIED TO US TWO QUESTIONS OF NEW YORK LAW IN ORDER TO DETERMINE WHETHER SIPC'S ALLEGATIONS STATED CAUSES OF ACTION FOR NEGLIGENT AND FRAUDULENT MISREPRESENTATION:

"1. MAY A PLAINTIFF RECOVER AGAINST AN ACCOUNTANT FOR FRAUDULENT MISREPRESENTATIONS MADE TO A THIRD PARTY WHERE THE THIRD PARTY DID NOT COMMUNICATE THOSE MISREPRESENTATIONS TO THE PLAINTIFF, BUT WHERE DEFENDANT KNEW THAT THE THIRD PARTY WAS REQUIRED TO COMMUNICATE ANY NEGATIVE INFORMATION TO THE PLAINTIFF AND PLAINTIFF RELIED TO HIS DETRIMENT ON THE ABSENCE OF ANY SUCH COMMUNICATION?

"2. MAY A PLAINTIFF RECOVER AGAINST AN ACCOUNTANT FOR NEGLIGENT MISREPRESENTATION WHERE THE PLAINTIFF HAD ONLY MINIMAL DIRECT CONTACT WITH THE ACCOUNTANT, BUT WHERE THE TRANSMITTAL TO THE PLAINTIFF OF ANY NEGATIVE INFORMATION THE ACCOUNTANT REPORTED WAS THE 'END AND AIM' OF THE ACCOUNTANT'S PERFORMANCE?"

THE GRAVAMEN OF SIPC'S STATE LAW CLAIMS IS THAT, HAD BDO ACCURATELY INFORMED THE REGULATORY AUTHORITIES IN ITS AUDIT REPORTS ABOUT BARON'S PRECARIOUS FINANCIAL CONDITION, SIPC COULD HAVE INTERVENED EARLIER, THEREBY AVOIDING EXPENDITURES ASSOCIATED WITH THE LIQUIDATION. SIPC CONCEDES THAT AT NO RELEVANT TIME PRIOR TO THE LIQUIDATION DID IT ACTUALLY RECEIVE BDO'S AUDIT REPORTS. RATHER, SIPC CLAIMS IT RELIED ON A REPORTING SYSTEM CREATED BY FEDERAL SECURITIES LAW FOR DELIVERY OF NEGATIVE INFORMATION ABOUT BARON'S FINANCIAL CONDITION. THE QUESTION THUS BECOMES WHETHER, UNDER THE UNDISPUTED FACTS AND CIRCUMSTANCES PRESENTED, SIPC CAN STATE A CAUSE OF ACTION FOR EITHER FRAUDULENT OR NEGLIGENT MISREPRESENTATION. THAT QUESTION WE ANSWER IN THE NEGATIVE.

FRAUDULENT MISREPRESENTATION

WHILE CONCEDING THAT NONE OF BDO'S STATEMENTS CONCERNING BARON'S FINANCIAL HEALTH EVER REACHED IT, SIPC CLAIMS THAT, UNDER THE REGULATORY SCHEME, IT UNDER-

STOOD SILENCE TO MEAN THAT BDO HAD GIVEN BARON A CLEAN BILL OF HEALTH. WE CONCLUDE, HOWEVER, THAT "NO NEWS IS GOOD NEWS" IS AN INSUFFICIENT BASIS FOR SIPC's FRAUD CLAIM HERE.

THE PRINCIPLE WE REAFFIRM TODAY IS WELL ROOTED IN NEW YORK LAW. PLAINTIFF CANNOT SUSTAIN A CAUSE OF ACTION FOR FRAUD IF DEFENDANT'S MISREPRESENTATION DID NOT FORM THE BASIS OF RELIANCE (BRACKETT V. GRISWOLD, 112 N.Y. 454, 20 N.E. 376; WARREN V. FOREST LAWN CEMETERY AND MAUSOLEUM, 222 A.D.2D 1059, 635 N.Y.S.2D 874). AS CONCEDED IN THE COMPLAINT, SIPC RELIED TO ITS DETRIMENT ON THE IMPLICATION OF THE NASD's SILENCE, NOT ON REPRESENTATIONS FROM BDO.

BEYOND THE GENERAL AND UNREMARKABLE PRINCIPLE THAT LIABILITY FOR FRAUD CAN BE IMPOSED THROUGH COMMUNICATION BY A THIRD PARTY, THE DIFFERENCES BETWEEN TINDLE V. BIRKETT (171 N.Y. 520, 64 N.E. 210) AND THE INSTANT CASE ARE CLEAR. IN TINDLE, PLAINTIFF RECEIVED DEFENDANT'S MISREPRESENTATIONS IN THE FORM OF A POSITIVE CREDIT REPORT UPON WHICH IT RELIED. IN THIS CASE, ALTHOUGH THE COMPLAINT ALLEGES BDO MADE A VARIETY OF MISREPRESENTATIONS, IT ALSO ALLEGES THAT SIPC DID NOT SPECIFICALLY KNOW OF ANY OF THEM. SIPC CANNOT CLAIM RELIANCE ON ALLEGED MISREPRESENTATIONS OF WHICH IT WAS UNAWARE EVEN BY IMPLICATION.

THIS IS NOT TO SAY THAT A MISREPRESENTATION CANNOT BE COMMUNICATED THROUGH SILENCE. THERE ARE SITUATIONS WHERE A MATERIAL OMISSION CAN INDUCE DETRIMENTAL RELIANCE AS EFFECTIVELY AS A FALSE STATEMENT (SEE, GAIDON V. GUARDIAN LIFE INS. CO. OF AMERICA, 94 N.Y.2D 330, 348, 704 N.Y.S.2D 177, 725 N.E.2D 598; NEW YORK UNIV. V. CONTINENTAL INS. CO., 87 N.Y.2D 308, 318, 639 N.Y.S.2D 283, 662 N.E.2D 763). THE OMISSION ON WHICH SIPC CLAIMS RELIANCE, HOWEVER, DID NOT COME FROM BDO, IT CAME FROM THE NASD. AS A RESULT, THE ROLE OF THE NASD CANNOT BE IGNORED. THE INESCAPABLE CONCLUSION FROM THE COMPLAINT'S REFERENCE TO THE REPORTING RULES AND THE REGULATORY "EARLY WARNING SYSTEM" IS THAT THE NASD HAD A SIGNIFICANT ROLE IN CHOOSING WHAT INFORMATION IT WANTED TO RECEIVE AND, IN ADDITION, WHAT IT DEEMED WORTHY OF COMMUNICATING. IN SUCH A SITUATION SIPC's RELIANCE ON SILENCE FROM THE NASD CANNOT BE EQUATED WITH ITS RELIANCE ON ANY AFFIRMATIVE MISREPRESENTATION OR CONCEALMENT OF MATERIAL FACT BY BDO.

THIS IS SO BECAUSE THE REPORTING SYSTEM ON WHICH SIPC RELIED PUT TOO MUCH DISCRETION IN THE HANDS OF THE NASD FOR SIPC TO BE ABLE TO CLAIM ANY SIGNIFICANT DIRECT RELIANCE ON BDO. SEC FILING REQUIREMENTS, INCLUDING THOSE REGARDING INDEPENDENTLY AUDITED STATEMENTS, COLLECTIVELY ENABLE THE RELEVANT REGULATORY AUTHORITIES TO PERFORM THEIR OVERSIGHT FUNCTIONS (SEE GENERALLY, TOUCHE ROSS & CO. V. REDDINGTON, 422 U.S. 560, 569). THE "REPORTS AND RECORDS PROVIDE THE REGULATORY AUTHORITIES WITH THE NECESSARY INFORMATION TO OVERSEE COMPLIANCE WITH AND ENFORCE THE VARIOUS STATUTES AND REGULATIONS WITH WHICH THEY ARE CONCERNED" (ID.). THE SEC AND THE NASD THEN USE SUCH INFORMATION AND THEIR REGULATORY EXPERTISE TO EVALUATE A BROKERAGE FIRM'S FINANCIAL STATUS, LOOKING AT THE FIRM'S COMPLIANCE WITH THE NET CAPITAL RULE AND OTHER INDICATORS OF FINANCIAL HEALTH (SEE, ID.; 17 CFR § 240.17A 5). THE INSTANT CASE ILLUSTRATES THE EVALUATIVE REGULATORY ROLE PLAYED BY THE SEC AND THE NASD WITH RELATION TO COMMUNICATIONS TO SIPC. HERE, THE CONSIDERABLE NEGATIVE INFORMATION OF BARON'S FINANCIAL DISTRESS IN THE BDO AUDIT REPORTS WAS NOT COMMUNICATED TO SIPC. THE REGULATORS' EVALUATIVE ROLE MAKES SIPC's CLAIM OF RELIANCE ON SILENCE FROM THE NASD AS AN INDICATOR OF "GOOD NEWS" UNTENABLE.

SIPC's complaint assumes that silence from the regulators can mean only one thing. In this case, however, the absence of communication from the NASD to SIPC could have meant any number of things, among them that the regulators were not carefully reading defendant's audits. The vagaries inherent in SIPC's theory of liability convince us that no information at all is simply too little information on which to base a claim for fraudulent misrepresentation here. Where BDO's reports were filtered through the NASD's own process of evaluation, SIPC cannot claim justifiable reliance on the filtered statements, or the absence thereof, as representing either the sum or substance of BDO's representations. The regulatory framework involved in this case thus creates an insurmountable disconnect between BDO's representations and SIPC's purported reliance on those representations.

Negligent Misrepresentation

The elements of a cause of action for negligent misrepresentation are likewise not present here. BDO did not engage in conduct linking it to SIPC in such a way as to create a relationship between the two that sufficiently approached privity (Credit Alliance Corp. v. Arthur Anderson & Co., 65 N.Y.2d 536, 493 N.Y.S.2d 435, 483 N.E.2d 110).

A number of recent cases have called upon this Court to apply the professional liability rule of Credit Alliance (see e.g., Parrot v. Coopers & Lybrand, 2000 N.Y. LEXIS 3836, N.Y.2d; State of California Pub. Employees' Retirement Sys. v. Shearman & Sterling, 2000 N.Y. LEXIS 3501, N.Y.2d; Prudential Ins. Co. v. Dewey, Ballantine, Bushby, Palmer & Wood, 80 N.Y.2d 377, 590 N.Y.S.2d 831, 605 N.E.2d 318). As we have made clear, "end and aim" is not the only focus of the negligent mis-

representation analysis. While we explicitly adhered to the principles set forth in Ultramares Corp. v. Touche (255 N.Y. 170, 174 N.E. 441) for imposing negligence liability on accountants, in applying those principles we identified three critical criteria for imposing liability. In deciding whether liability can be imposed by a non-privy third party, we ask whether the accountant was aware that the reports were to be used for a particular purpose, whether in furtherance of such purpose a known party was intended to rely and, finally, whether there was some linking conduct which evinced the accountant's understanding of that party's reliance (Credit Alliance Corp. v. Anderson & Co., supra, 65 N.Y.2d, at 551, 493 N.Y.S.2d 435, 483 N.E.2d 110).

Applying those criteria here, there was no "linking conduct" that put SIPC and BDO in a relationship approaching privity. BDO's audits were not prepared for the specific benefit of SIPC, were not sent to SIPC, were not read by SIPC and, as a result, did not place SIPC in a relationship significantly different from anyone else in the regulatory community or the investing public at large. Hence, the third prong of the Credit Alliance test is not met. Absent allegations tending to show linking conduct, SIPC's complaint cannot state a cause of action for negligent misrepresentation.

Accordingly, both certified questions, in the context of the facts and circumstances presented, should be answered in the negative.

* * * * * * * * * * * * * * * * *

Following certification of questions by the United States Court of Appeals for the Second Circuit and acceptance of the questions by this Court pursuant to section 500.17 of the Rules of Practice of the

New York State Court of Appeals, and after hearing argument by counsel for the parties and consideration of the briefs and the record submitted, certified questions, in the context of the facts and circumstances presented, answered in the negative. Opinion by Judge Ciparick. Chief Judge Kaye and Judges Smith, Levine, Wesley, Rosenblatt and Graffeo concur.

Decided February 20, 2001